PENDLETON BROTHERS *et al. v.* JOHNSON & HARRIS *et al.*\*

BLECKLEY, C. J.—The judge committed no material error in adjudicating the questions presented whilst the proceeding before him

\*In this and the following cases of this volume, no opinion further than the head-notes was filed.

was in progress, nor did he abuse his discretion in granting an injunction and appointing a receiver as to the assets of Pendleton Brothers.                                                  *Judgment affirmed.*

March 10, 1890.

Injunction and receiver. Practice. Evidence. Before Judge ROBERTS. Dodge county. At chambers, July 11, 1889.

On June 19, 1889, Johnson & Harris and Gibian & Company brought their petition, alleging as follows: Pendleton Bros., a firm composed of B. W. Pendleton and W. W. Pendleton, are indebted to Johnson & Harris $164.76 and interest, and to Gibian & Co. $127.10, all of which was due on May 1, 1889. Pendleton Bros. failed to pay these debts at maturity, since which petitioners have properly demanded such payment, which has been refused. Pendleton Bros. are insolvent, their indebtedness being about $8,000, and their assets amounting, if properly managed, to not over $2,500. They executed, on or about May 28, 1889, to Mrs. Mary Pendleton, of Dodge county, their mortgage for $3,900, to secure note of that date for the same amount, on all the stock of merchandise in the storehouse occupied by them in Eastman, as well as on all the Times-Journal newspaper material for printing, etc., in the office of that paper in the same town, in the building on which they have a lease unexpired by about three or more years. About June 4, 1889, they executed to John Barker (a person non-resident of the State or fictitious and unknown) a mortgage upon the above stated property for $1,500. Since the execution of the foregoing mortgages, they have executed to Small & Mallory, of Bibb county, a mortgage for about $600, which is not on record and is inaccessible to petitioners. The mortgages to Mrs. Mary Pendleton and John Barker have recently been recorded; and their existence is admitted by the defendants. At the time of executing all of them, Pendleton Bros. were indebted to petitioners and

others about $8,000, were wholly insolvent and have been so at all times since; and the mortgagees knew that they were so at the time of the delivery of the mortgages. Those to Mrs. Mary Pendleton and John Barker are fraudulent and void, as Pendleton Bros. were not indebted to them. All three are void for the reason that they were executed to defraud petitioners and to hinder and delay them in the collection of their debts; they were given and received between the mortgagors and mortgagees with that understanding. Pendleton Bros. continue to sell goods for cash and to receive money for subscriptions to the Times-Journal and for advertising and job work, but they absolutely refuse to pay any of it upon their debts, but are pocketing and keeping the proceeds, which is a fraud on petitioners and other creditors; and it is their intention to dispose of the property for cash and not pay their debts. They are merchants, doing a yearly business of over $5,000. The stock of merchandise and fixtures in the store, and the printing office, newspaper and material therein, and some books, accounts and notes, are about all the property belonging to them out of which petitioners can collect anything. They pray for decree that the mortgages are void for the above stated reasons; for injunction against their enforcement and collection from the property mentioned, and against the sale, transfer or encumbering of the same; for receiver in the interest of petitioners as well as of all other creditors, to sell the property and hold the proceeds for the benefit of the creditors, and to pay over to petitioners and the rest of the creditors under such order and decree as may be rendered; and for process against Pendleton Bros., Mary Pendleton, Small & Mallory and John Barker. To this petition was appended the oath of one of petitioners' attorneys, that the allegations therein are true, and that irreparable damages will be sustained by peti-

tioners unless restraining order is granted and injunction issue.

At the hearing, the petitioners offered to amend by stating that they had "been mistaken as to name but not the parties. Wherever John Barker appears insert D. H. Barger, and wherever Mary Pendleton appears insert A. M. Pendleton." Over objection of defendants this amendment was allowed; and this forms the first ground of exception.

Upon the petition of eleven other parties, alleging that they were creditors of Pendleton Bros., and that they adopted the 'allegations of the original petition, and praying that the injunction and receiver be granted and that they be allowed to participate *pro rata* in the fund in court, and stating the amounts of their claims, they were allowed to be made parties plaintiff. Defendants objected, because their petition did not show that they had matured claims, and that payment had been properly demanded and refused; but the court overruled the objection, and this forms the second exception.

Defendants then demurred to the original petition, on the grounds that there was no equity in it; that it was not sufficiently verified; that sufficient assets to pay the lien debts were not shown; that the privilege of becoming parties was not extended to other creditors by the petition; and because there was an adequate remedy at law. This demurrer not being sustained, a third exception was taken.

An answer was made by Pendleton Bros., and one by Mrs. A. M. Pendleton, D. H. Barger,.Small & Mallory and J. S. Shingler. They denied all the material allegations of the petition, except that Pendleton Bros. were indebted to the original petitioners in amounts approximating those claimed. But they showed that Pendleton Bros. did a mercantile business, which was separate and distinct from the newspaper and printing

business conducted by them under the firm name of
W. W. Pendleton & Co.; and that the following liens
were on the property which had been taken possession
of by the temporary receiver appointed by the court:
An agreement of January 3, 1888, between W. T.
McArthur and W. W. Pendleton and R. S. Burton,
selling them certain property and retaining the owner-
ship of it to the extent of $700 until that amount
should be paid; recorded August 31, 1888. A mort-
gage of February 9, 1889, from W. W. Pendleton &
Co. to C. H. Peacock *et al.* on the material in the print-
ing office, for $1,275.50, due sixteen months after date,
and recorded February 9, 1889. A mortgage of April
23, 1889, from Pendleton Bros. and W. W. Pendleton
& Co. to Mrs. A. M. Pendleton, on the entire stock of
merchandise and the printing material, notes, accounts,
etc. belonging to them, subject to pre-existing mort-
gages, to secure notes for $3,950 borrowed and used in
both the mercantile and printing business, due one day
after date, and recorded May 9, 1889. A mortgage of
May 20, 1889, from both firms to D. H. Barger, on the
merchandise and printing material, subject to pre-
existing liens, to secure notes for $1,500 borrowed and
used in both businesses, and recorded May 21, 1889.
A mortgage of May 27, 1889, from both firms to J. S.
Shingler and Small & Mallory, on the merchandise and
printing material, subject to pre-existing liens, to secure
a note to Shingler for $50 and one to Small & Mallory
for $126.12, the former amount being borrowed and
used in both businesses, and the latter being for mer-
chandise bought of Small & Mallory; recorded June
18, 1889. All these were given and received in the
utmost good faith, with no intention of hindering, de-
laying or defrauding other creditors, and with no pur-
pose other than of securing the indebtedness therein
expressed. Pendleton Bros. have no·interest in them

further than in all their just debts, each and all of which they desire and intend to pay; and the only reason why any of those matured have not been paid, is because collections are bad. Most of their creditors whose debts are due have been indulgent, and have extended time for payment until collections are better. The original petitioners are simply creditors by open account; and the only effect of granting an injunction and appointing a receiver at their instance will be to interfere with the liens and mortgages and their enforcement, waste the property in paying costs and expenses, depreciate its value and ruin the business of Pendleton Bros., rendering them unable to pay their debts, which they could and would do otherwise; and not only would petitioners fail to realize anything, but the lien creditors would lose heavily. Petitioners' attorney who undertook to swear to the petition, knows absolutely nothing about the allegations therein which he says are true.—Other portions of the answers referring particularly to the firm of W. W. Pendleton & Co. and the newspaper and printing business conducted by them, are not here material.

At the hearing there were affidavits and other evidence tending to support the petition and answers. It appeared that the stock of merchandise of Pendleton Bros. on hand cost about $2,300, and ought to be worth about $3,000 if a reasonable profit were added; and that their accounts were worth about $150. They probably did an annual business of $5,000 or over. Petitioners' attorneys had claims against them amounting to thirteen or fourteen hunded dollars; and there was testimony that there were probably seven or eight hundred dollars more outstanding; all these being exclusive of the indebtedness on the mortgages. Mrs. A. M. Pendleton's home was in Tennessee, and she returned no property for taxation in Dodge county, Ga.; but the

recital in her mortgage that she was of that county is a mistake, she being on a visit there when it was made. There was conflicting testimony as to whether 34 boxes of tobacco, 36 barrels of flour and 220 pounds of candy were unusually large quantities of those articles to be carried in the store of Pendleton Bros.

The judge enjoined Pendleton Bros. from interfering with the goods of that firm, and appointed a receiver to take charge of and sell those goods, depositing the proceeds in bank, and giving a bond for $3,000. He further ordered that the newspaper printing material be turned over to W. W. Pendleton & Co., and that the injunction and receiver be refused as to that newspaper (the Times-Journal), the same having been shown to be the property of W. W. Pendleton & Co. The defendants excepted to this decision, as well as to the folfowing rulings made during the progress of the hearing, besides those already noted:

Error in admitting, over defendants' objection that it was based upon information, the affidavit of the temporary receiver that he was a practical newspaper man and had some knowedge of the popularity of the Times-Journal, and information acquired since his appointment, and that from his knowledge and information he deposed that the good will of that newspaper was worth little, if anything.

Error in admitting, over objection that it was irrelevant, the affidavit of a witness that 34 boxes of tobacco and 225 pounds of candy are not unusual quantities where annual sales reach thirty to thirty-five thousand dollars, but would be unusual where the annual business was not over five to seven thousand dollars, the same being a retail family grocery store such as was kept by Pendleton Bros.

Error in admitting, over objection that it was irrelevant, an affidavit that since the consolidation of two

newspapers into the Times-Journal, the same had steadily decreased in value and its list of subscribers diminished; that the entire outfit and good will thereof were not worth over $2,000; and that deponent was a practical newspaper man and thoroughly acquainted with the Times-Journal office.

Error in admitting, over objection that it was irrelevant and based upon opinion, an affidavit of the temporary receiver that, since his appointment, he had thoroughly examined the stock and fixtures of Pendleton Bros., and the same were not worth more than $2,000; that he was also acquainted with the Times-Journal printing material, and all of it was not worth over $2,500; that he was a practical printer and had had experience in publishing a newspaper and in merchandising; that from his experience in the newspaper business in Eastman, he would judge that the office of the Times-Journal, together with its job office, manufactured in papers and job work more than $5,000 worth per annum; etc.

Error in admitting, over objection that it was irrelevant, an affidavit of the ordinary that he had examined the digest of tax returns for 1888, and A. M. Pendleton made no return for taxes for that year; and he was a practical newspaper man and well acquainted with the Times-Journal, its office, etc., and the same had greatly declined in value from December, 1888, to the present.

Error in admitting, over objection that they were irrelevant, affidavits of the tax-receiver of the county for 1888 and 1889, that Mrs. A. M. Pendleton during those years returned no property for taxation, and that the time for receiving taxes had expired.

Error in admitting, over objection that it was irrelevant, an affidavit of the agent of Byck & Selig, that W. W. Pendleton & Co. made purchases from him as agent amounting to $146.30, and at the same time, in April, 1889, sent to Byck & Selig for an unusually large

order which was not filled for that reason, knowing that paper and stationery were not kept in such quantities in country newspaper offices.

Error in admitting, over objection that it was irrelevant, an affidavit of one Wall that (among other facts) 34 boxes of tobacco, 36 barrels of flour and 220 pounds of candy were unusual amounts to be kept in a retail store in Eastman, and that the trade of a store in that vicinity did not require that amount of stock.

Error in admitting, over objection that it was irrelevant, an affidavit of the temporary receiver, that he was present a portion of the time at the assessment of the Times-Journal office by W. W. Pendleton and A. L. Ryals, and in their estimate they valued the power press at $1,350, and did not look at the cost bills, but made many estimates by catalogue prices, when in fact such goods and material can be bought from the manufacturers at from 30 to 50 per cent. below the catalogue prices, for cash, as deponent had made such purchases; that the stock of stationery at the Times-Journal office was unusually large for a country paper office; that deponent had had an experience of twelve years in the newspaper business; and that since his appointment he presented several of the accounts of W. W. Pendleton & Co. against various parties, who refused to pay because Pendleton & Co. were indebted to them, and he had not been able to collect over $5 of the amount as parties denied being indebted.

Error in admitting, over objection that it was irrelevant, an affidavit of one Foster, with bill attached, that he was interested in the purchase of the power press used in the Times-Journal office; and that it cost $692.55, and the cost of the rest of the material therein added thereto amounted to $1,225, as shown by the attached bill, which was the original bill.

Error in admitting an account of C. A. Phillips

against Pendleton Bros., dated Macon, Ga., July 5, 1889, and stating an indebtedness for specified articles bought on May 6 and 20, $16.10, followed by an affidavit of C. A. Phillips that the above account "is just and correct according to the best of his knowledge and belief"; this affidavit not headed, but sworn to and subscribed before one signing as "Not. Pub. Bibb Co., Ga.," with seal. The objections were, that the account was sworn to only to the best of affiant's knowledge and belief and not sworn to be due, that no demand for payment and refusal was alleged, and that the place of making the affidavit did not appear.

Error in admitting an account of Nussbaum, Vansyckel & Tindall against Pendleton Bros., dated Macon, Ga., July 4, 1889, and stating an indebtedness of $82.91 for specified articles bought at numerous dates from April 9, 1888, to February 23, 1889, followed by an affidavit of H. C. Tindall, member of the firm named, that "the above is a just and true account according to the best of his knowledge and belief." The objections were, that it was sworn to only according to the best of affiant's knowledge and belief and not sworn to be due, and that no demand and refusal were alleged.

Error in admitting an account of Gibian & Co. against Pendleton Bros., headed Macon, Ga., for specified articles bought at certain dates in March and April, amounting to $127.10, followed by an affidavit not headed, of A. Gibian, that "the above account is just and true as it appears on the books of the said A. Gibian & Co.," sworn to June 1, 1889, before one signing as "N. P. Bibb Co., Ga." The objections were, that it was sworn to as appears on the books and not sworn to be due, that no demand and refusal were alleged, and that the place of making the affidavit did not appear.

Error in admitting an account of Johnson & Harris

against Pendleton Bros., headed Macon, Ga., and stating an indebtedness of $164.76 for specified articles bought at numerous dates from August 24, 1888, to April 19, 1889, followed by an affidavit of Geo. T. Harris, one of the firm named, "that the within account for $164.76 is just and true as stated, with interest," sworn to June 17, 1889, but (as it appears in the bill of exceptions) not signed by any attesting officer. The objections were, that the account was not sworn to be due, and that no proper demand and refusal were shown.

DeLacy & Bishop, for plaintiffs in error.
L. A. Hall and E. Herrman, by brief, contra.