MARTIN v. BURGWYN et al.

1. Although the act of 1887 requires a petition for injunction and receiver to be verified, yet, where the verification is imperfect, the deficiency may be supplied by affidavits at the hearing in case the presiding judge shall think proper, in the exercise of his discretion, to proceed on the defective verification. It is best, however, to require proper verification before any action is taken on the petition.

2. A petition by the vendors of goods against an insolvent purchaser, alleging fraud in the purchase and repudiating the contract of sale on that account, has equity on which to proceed to reclaim the goods or their proceeds in the hands of such purchaser. This equity holds equally whether the term of credit has expired or

not. In such case, a receiver may be appointed to take charge of money and books of account.

3. An order appointing a receiver is sufficiently specific in its description as to notes and books of account which specifies them thus: "the books, notes and accounts of all kinds of the said defendant in the business of selling cigars, snuff, tobacco and other goods."

4. Where, in his sworn answer to a rule for contempt in not surrendering up to a receiver his money, books, notes and accounts, the defendant alleges that he cannot make the surrender because, before the filing of the petition, he paid the money and transferred the other assets to his sister in discharge of a *bona fide* indebtedness to her, that she now has possession of the money, books, notes and accounts, and they are not now in his power, possession or control, and where this answer is supported by the affidavit of the sister whose credibility as a witness is unimpeached, she admitting on oath that she has the assets, and it further appearing that she is solvent and able to respond to the plaintiffs or the receiver for the same and that she is a resident of the county where the suit is pending, the answer thus supported is sufficient to relieve the defendant from the imputation of willful contempt, and the rule against him should be discharged; more especially as the plaintiffs, under the facts, are not dependent upon this harsh proceeding to realize the assets in question, but may reach the same, if the testimony above recited be false, either by making the sister a party defendant in the cause, or by a regular action against her at the suit of the receiver.

5. Irregularities in proceedings for contempt are immaterial where the result is a sufficient purging of the contempt and a consequent discharge of the rule.

November 23, 1891.

Injunction and receiver. Verification. Equity. Debtor and creditor. Contempt. Practice. Before Jude RICHARD H. CLARK. Fulton county. At chambers, August 4, 1891.

Reported in the decision.

MAYSON & HILL and JOHN L. HOPKINS & SON, for plaintiff in error.

GLENN & MADDOX, BENJ. PHILLIPS, WEIL & GOODWIN, L. L. KNIGHT, C. L. BROOKS and DAVID EICHBERG, *contra*.

SIMMONS, Justice.

1. The original petition of the plaintiffs was sworn to

by Harralson, their agent, who made affidavit that the facts stated in the foregoing petition, so far as they were stated on his own knowledge, were true, and so far as stated upon the knowledge of others, he believed them to be true. At the hearing the defendant moved to dismiss the petition on the ground that it was not sufficiently verified. The motion was overruled, and the hearing was had when an amendment was filed, the affidavit to which stated positively that the facts contained therein were true. Affidavits from other persons were also filed, sustaining the allegations in the bill and amendments.

While the act of 1887 (Acts 1887, p. 64) declares that a petition which seeks an extraordinary equitable relief or remedy must be verified, and while we think it is the better practice for a judge to require petitions seeking extraordinary equitable relief or remedies to be positively verified before he grants any order thereon, still, if the petition should be imperfectly verified, the deficiency may be supplied at the hearing by a new affidavit to the petition or by the affidavits of other persons, if in the exercise of his discretion he should think proper to proceed on the defective verification. If the judge should refuse to proceed on account of the insufficiency of the verification, we would not hold the ruling to be erroneous. *Boykin* v. *Epstein*, 87 *Ga.* 26, 13 S. E. Rep. 15. If, however, the judge sees proper, in the exercise of his discretion, to allow the petition to be properly verified, either by a new affidavit of the plaintiff, or by affidavits of others who know the facts, we will not control his discretion in so doing. *Shannon* v. *Fechheimer*, 76 *Ga.* 86; *Alspaugh* v. *Adams*, 80 *Ga.* 345.

2. The defendant also moved to dismiss the petition on the ground that the petition and amendments did not make out a case for the relief sought; that the evi-

dence did not authorize the appointment of a receiver; that no receiver could be had for money in the hands of defendant; that the appointment of a receiver for books, notes and accounts was unauthorized, as the remedy at law was complete; and that the debts of the petitioners were not due. The petition charges, in substance, that the defendant was insolvent; that at the time he made the purchases of goods from the plaintiffs, he had no intention or purpose to pay for the same, but his intention was to dispose of them and put the money in his own pocket; that he did sell a large part of them to Gregg & Company with intent to get the stock of goods so sold beyond the reach of his creditors; that his plan was to acquire goods from the plaintiffs and other creditors fraudulently, sell and dispose of them in like manner, and appropriate the proceeds to himself; that he refused to make any payments on his debts, and had evaded all his creditors and declined to make settlements with them; that Gregg & Company claim they are *bona fide* purchasers without notice; that the defendant sold to them with the intent and purpose to delay, defraud and hinder the petitioners in the collection of their debts, and to put the said assets which in justice and equity belonged to the petitioners and other creditors, in the shape of money, and thus perfect his scheme to defraud them of their goods; that if petitioners failed to reach the money which Gregg & Company paid the defendant, they would lose their entire indebtedness; that this money ought to be appropriated to the payment of all the creditors, and the only method of reaching it was through the action of the court; that they had sold the defendant goods on the faith of certain representations as to his solvency made by him to Dun & Co., and that said representations were false; that he was insolvent at the time the statements were made; that the goods being sold on the

faith of the statements and they being false, the contract
for the sale thereof was void, and they repudiated it;
and the defendant having sold the goods to a *bona fide*
purchaser, the courts would follow the proceeds of the
sale, because the defendant, not having acquired title to
the goods, had no title to the proceeds thereof, but held
the same for the use of the parties from whom he ob-
tained the goods. It may be fairly inferred from these
and other allegations that the notes, accounts and money
were the proceeds of the goods sold defendant by the
plaintiffs, and we think the facts alleged were sufficient
to authorize the plaintiffs to proceed to reclaim their
goods in the hands of the purchaser, or reclaim the pro-
ceeds thereof in case they had been disposed of to inno-
cent purchasers. According to these allegations, the
defendant was insolvent at the time of the purchase of
the goods, and did not intend at that time to pay for
the same. If that be true, the sale was void, at the elec-
tion of the vendors; the purchaser obtained no title to
the goods, and the vendors could reclaim them wherever
found, unless they had been sold to innocent purchasers;
and in that event, they would have a right to the pro-
ceeds of the goods if such proceeds were found in the
defendant's possession, custody or control. Under this
state of facts, it was immaterial whether the debt was
due or not. Where a debtor by fraudulent means has
obtained a credit in the purchase of goods, the vendor,
upon ascertaining the fraud, can rescind the sale and
institute proceedings to claim the goods or the proceeds
thereof, whether the time of credit given the purchaser
has expired or not. The contract to give time to pay
for the goods is, at the instance of the seller, as void as
the contract of sale. And if, in such case, it is neces-
sary for the protection of the rights and interests of
the plaintiffs, the court may appoint a receiver and re-
quire the debtor to turn over to such receiver his books

of account and notes, and the money arising from the sale of the goods. Benj. Sales, §451, Bennett's American Notes (ed. of 1888), p. 443.; *Cohen v. Meyers*, 42 *Ga.* 46 ; *Johnson v. O'Donnell*, 75 *Ga.* 453.

3. The order appointing the receiver provided, among other things, that he should turn over "the books, notes and accounts of all kinds of the said defendant in the business of selling cigars, snuff, tobacco and other goods." Objection was made by the defendant in the court below to this part of the order, because it did not specify what books, notes and accounts he must turn over to the receiver, and it was impossible to comply with it as it stood. We think the order was sufficiently specific to put the defendant on notice of what books, notes and accounts he must turn over. In fact the order specifies that they were the books, notes and accounts "in the business of selling cigars, snuff, tobacco," etc. The defendant was a cigar and tobacco dealer ; plaintiffs had sold him cigars and tobacco, and they had instituted this suit to recover the articles sold or the proceeds thereof. The litigation was entirely about these matters. So far as the record discloses, the defendant had no other business than that of dealing in cigars and tobacco, and if he had, the order did not call for the books, notes, etc. in any other business. It seems to us that the order was sufficiently specific to put a man of the weakest mind on notice of what books, notes and accounts were required of him.

4, 5. The 4th head-note fully covers the question therein decided, and needs no further elaboration. The 5th head-note likewise covers some minor points of irregularity made in the bill of exceptions, and it is needless to comment upon them, as we hold that the defendant had sufficiently purged himself of contempt.

*Judgment affirmed as to injunction and receiver, but reversed as to the attachment for contempt.*