### DOZIER, assignee, *v.* LOGAN *et al.*

1. Where the assets of a mercantile corporation are in the hands of an assignee to whom they have been regularly assigned for the benefit of all the creditors of such corporation, and where such assignee has given bond in conformity with the terms of the statute, a court of equity, upon the allegation of insolvency as to only one of the sureties, there being two sureties upon the bond of the assignee; and upon the further allegation that the assignee declines to account to such creditors from time to time touching the condition of the trust, is not authorized to remove such assignee and appoint a receiver, there being no allegation and no proof of any misfeasance of the assignee, or any misappropriation by him of any part of the trust property.

2. The appointment of a receiver is a harsh remedy, and one to which, in such cases, resort should not be had, except where the interests of creditors are exposed to manifest peril.

3. Under the facts of the present case, the court erred in appointing a receiver.

Argued April 17, — Decided May 19, 1897.

Injunction and receiver. Before Judge Kimsey. Hall county. April 1, 1896.

On March 2, 1896, A. R. Logan and four other individuals brought their petition against J. H. Dozier, assignee, alleging as follows: On November 23, 1893, the Logan Hardware Company, doing business at Gainesville, made an assignment for the benefit of its creditors, constituting said Dozier and one Boone assignees to carry out the provisions of said deed, there-

by conveying to them assets of the value of $7,000. The sureties on the bond of the assignee were J. W. Oslin and A. D. Candler. Petitioner Logan, said Oslin, and J. H. Dozier were the sole stockholders in said corporation. Two years since Boone turned over to Dozier all the assets of the company that had been in his hands, removed from the county, and ceased to be connected with the trust. Plaintiffs other than Logan were creditors of the corporation. Oslin is insolvent. In July, 1894, Dozier stated in open court that he had collected about $1,800 of the assets of the corporation. Plaintiffs are unable to state what has been done with that sum and subsequent collections, and have been unable to acquire any information as to what has become of the assets which, under the assignment, went into the hands of Dozier, who refuses to give any information on the subject, but states that there is no money on hand even to pay taxes. At the July term, 1895, the superior court ordered said assignee to pay to plaintiff Dobbs $50, which he has failed and refused to do. On information and belief it is alleged that little or nothing has been paid on the debts and liabilities of the corporation, that its assets are being misapplied and misappropriated, and that there is grave danger of the loss and destruction of the remainder. Dozier is utterly without business capacity and no collector whatever. The prayer is for injunction and a receiver.

Dozier demurred for want of a cause of action alleged, and for want of equity in the petition; and answered: The assets conveyed to the assignee by the assignment consisted of notes and accounts, an iron safe, a walnut desk, a wagon, dray, and a pair of scales, the other assets having been disposed of by the company before the assignment. The notes and accounts are mostly on insolvent parties; a large majority of the good notes and accounts are held, and were at the time of the assignment, by different creditors of the company, as collateral security. Defendant did state that he had collected about $1,800, but a part of that amount was on collaterals; being interested in the company, he was desirous that the creditors be paid as much as possible, and he, without compensation and not as assignee, collected a large amount on collaterals held by different cred-

itors, they being placed in his hands by said creditors for that purpose, and turned the money so collected over to them. He has used due diligence to collect all he could of the assets assigned, and has honestly applied every dollar that has come into his hands as assignee. An order was passed ex parte that he should pay Dobbs $32.26, but said order was unauthorized by law, and no such amount is due Dobbs.

The evidence for the plaintiffs was, in brief, as follows: Dean & Hobbs, attorneys, collected on collaterals for E. M. Clayton from W. K. Vandiver $101.80, and paid the same to Clayton, less their fees. Defendant Dozier collected on collaterals and paid to W. I. Clarke, attorney, for H. F. Logan, $42.75. From the collaterals held by J. R. Boone to secure a note of the hardware company for $200, and one for $800 to Y. J. Harrington on which Boone is security, he has received $572, of which Dozier collected about $250 on small collaterals from time to time and turned the same over to him. W. L. Telford, as attorney, has for collection debts due by the hardware company, which were preferred under the assignment, to three named creditors, aggregating about $457, and has received nothing on said debts from the assignee. At the time of the assignment the company owed $145.59 to one of the three creditors last mentioned, no part of which has been paid. It owed $50 to J. T. Curtiss, a preferred creditor, for borrowed money, no part of which has been paid. At the time of the assignment it owed plaintiff Dobbs $84.95 for services rendered as workman; the assignee gave him an order on Barrett & Co. for $43.10 which he collected and which is all he ever received on this debt, and he holds no collateral. Boone, as attorney, collected on collaterals and paid to J. Carter $209.35, less his fee. Plaintiff Logan was one of the three stockholders in the company. He has made repeated demands on Dozier for information as to the condition of the affairs of the assignment, the state of his account, and collections, payments, etc., but the assignee invariably declined to give him any information on the subject. Dozier is the poorest of business men and worst of collectors. At the time of the assignment the stock of goods of the company was sold to Dinkins & Co. for $4,866.83, a part

of which was to pay off a mortgage held by the First National Bank, and J. W. Oslin was to check on that sum for that and other payments. In 1895 Dozier told Logan that this account had never been adjusted by him and Oslin. The temporary receiver appointed by the court in this case received from Dozier, besides other assets of the company, the sum of $19.50 as the cash on hand. On August 17, 1895, Findley, as attorney for Deering & Co., receipted Dozier and Boone, assignees, for $92.49 on the debt due Deering & Co. by the hardware company, which amount was paid over by order of the court.

Defendant introduced the deed of assignment executed on November 24, 1893, conveying to Dozier and Boone all of the assets of every kind for the benefit of its creditors; the inventory and schedule of assets of every kind; and the schedule of indebtedness of the company, with the names of creditors, their residences, and the amounts due each; all annexed to the deed and verified. The deed recites "that said company has sold its stock of merchandise and fixtures so sold had been paid and the same applied to the debts due by" the company, and all rights arising under said contract of sale are assigned to the assignees. Said contract annexed to the deed recites that the last payment falls due January 15, 1894; that the notes and accounts conveyed to the assignees aggregate in face amount $3,660.53, other personal property aggregates an amount estimated at $140.00, $25.00 of which is cash. The indebtedness of the company to preferred and a large number of other creditors amounts to $8,690.31, and the collaterals held by creditors amount to $3,581.07. The deed recites "that H. F. Logan among other collaterals mentioned owned due on F. S. Barrett & Co., for $40.32."

Dozier swore, that he has not allowed any debt due the company in his hands as assignee that could possibly be collected by law to become barred by limitation, and that he has brought suit in a number of cases, some of which are pending, in some defendants have been sued to judgment, and in some the amounts have been collected by suit. Among others the assignees have sued A. R. Logan for a large amount, which is still pending, and no fund or debt of his is in danger of being

lost by any action or conduct on deponent's part. The assignee never had anything to do with the $4,866.83, the purchase-money of the stock of goods and fixtures by Dinkins & Co., and the transaction was before the assignment, and the sum applied to the payment of the company's debts by its president. Part of the sum was applied to the debts due by the company to the First National Bank, between $3,500 and $4,000, the balance to other debts. All the best notes and accounts of any size were used by the company as collateral security to a large number of its creditors. When he examined the books and accounts, he found that they consisted largely of small accounts on parties scattered through a number of counties, a great majority of whom were insolvent. He has collected between $1,200 and $1,300, and has paid it out according to law and the orders of the court. The company owed his wife, a preferred creditor, about $350 for borrowed money, but she has never been paid a cent.

There were affidavits by nine prominent citizens, that they have known Dozier for several years, and that he is a man of the highest personal integrity, perfectly trustworthy in financial matters, and a safe business man.

It appears that on December 26, 1893, a petition was filed in the superior court in the case of Biddle Hardware Company et al. v. The Logan Hardware Company, and the two assignees already named, the purpose of which was to set aside the assignment and for the appointment of a receiver; and that on January 29, 1894, the court ordered, upon the hearing, that the application for receiver be refused, but that the assignees be enjoined from paying out any sum collected belonging to the hardware company to the preferred creditors until further order, except by consent of all the parties to this bill.

After the hearing in the present case, the court granted the prayers of the petition, and appointed W. B. Sloan as permanent receiver of all the goods, accounts, books, and all assets whatever of the company, directing him to receive and collect all moneys due to the company by suit or otherwise, as may seem best, to sell the personal property on hand at private sale and deposit in bank all the money collected, subject to the

12

order of the court, and that he do all other acts proper and necessary to speedily close the business of the company. To this judgment Dozier excepted.

*Perry & Craig*, for plaintiff in error.

*J. B. Estes, W. I. Clarke* and *F. M. Johnson*, contra.

ATKINSON, J. We have no difficulty in reaching the conclusion that, under the facts in the present case, the chancellor, to whose judgment exception is taken, erred in appointing a receiver. Under the provisions of the act approved October 16, 1889 (Acts of 1889, p. 108), the assignees named in the deed of trust, before entering upon the execution of the trust confided to them, gave a bond with two securities, conditioned in accordance with the terms of the statute. Under the provisions of the statute above referred to, this bond was executed for the protection of the creditors of the assignor; and if any one of them suffered injury in consequence of the misfeasance or nonfeasance of the assignees, the statute gives him a remedy against the assignees, and the sureties on their bond. As we have said before, there was an acceptance of this trust by the assignees. While there are some vague, indefinite intimations in the petition filed for the appointment of a receiver, to the effect that one of the assignees who seems to have been most active in the execution of the trust was wanting in capacity as a man of affairs, there is no suggestion of any fraud or improper conduct upon his part in dealing with the trust committed to his care. All such allegations are general in their terms, and are fully refuted by the uncontradicted testimony of numbers of witnesses who testified to the business qualifications of the assignee whose capacity was assailed. The only real complaint seems to be that the assignees are not as speedy in the execution of the trust as the creditors, impatient of delay, would seem to desire. There is an allegation that one of the sureties on the bond of the assignees is insolvent, but there is no intimation in the record that the two principals and one of the sureties are not each and all of them entirely solvent. In the absence of any attack upon their solvency, the court is bound to presume that they are solvent and possessed of sufficient means to answer any judg-

ment which may be recovered against them upon the bond. Therefore in no possible sense can it be said that these creditors are remediless according to the strict rule of the common law. They have a perfect security, and the one provided by statute to meet this identical contingency. In the absence, then, of allegations of fraud or misconduct upon the part of the assignees, there is no possible theory, according to our conception of the law, upon which a court of equity is authorized to take from the hands of these assignees the property committed to their care for the benefit, not alone of the complaining creditors, but of all the creditors of the assignor. As was well said by Mr. Justice McCay, in the case of *Crawford* v. *Ross*, 39 *Ga.* 49, "The high prerogative act of taking property out of the hands of one, and putting it in pound, under the order of a judge, ought not to be taken, except to prevent manifest wrong, imminently impending." If it were possible for the court, as at present constituted, to add anything to the emphasis of this language, it would do so without the slightest hesitation.

The appointment of a receiver is recognized as one of the harshest remedies which the law provides for the enforcement of rights, and is allowable only in extreme cases, and under circumstances where the interest of creditors is exposed to manifest peril. The courts of late years are drifting away from the landmarks which in former years marked the line of division between the power of chancery courts to seize the property of an individual through the instrumentality of a receiver, and the right of the individual himself to retain possession until by the judgment of the court his property could be judicially appropriated to purposes inconsistent with his individual possession. In the exercise of the great discretionary power conferred upon our brethren of the circuit bench with respect to such matters, they can not be too cautious; and unless there is an immediate and present necessity for such action, of which we find no evidence in this record, the appointment of a receiver should be refused.

*Let the judgment of the court below be reversed. All the Justices concurring.*