IRWIN *et al. v.* WILLIS *et al.*
GEELE *et al. v.* WILLIS *et al.*

464

Nos. 15850, 15861.   June 12, 1947.   Rehearing denied July 11, 1947.

*James F. Cox, William G. Grant, Lokey & Bowden, Smith, Partridge, Field & Doremus, Sydney F. Keeble,* and *Carl B. Copeland,* for Irwin *et al.*

*Powell, Goldstein, Frazer & Murphy, Vance Custer, H. G. Bell, Herman Talmadge, A. B. Conger,* and *W. H. Miller,* for Willis *et al.*

*Smith, Kilpatrick, Cody, Rogers & McClatchey, E. D. Smith Jr.,* and *Hoke Smith,* for Geele *et al.*

DUCKWORTH, Presiding Justice. (After stating the foregoing facts.) ■ Counsel for the plaintiffs in error very strongly insist that upon this record it should be held as a matter of law that Mrs. Annie Lee Irwin is not liable. In the view we take it is entirely unnecessary to go exhaustively into a consideration of the various legal principles relating to the general subject of liability of a landlord for injuries sustained upon premises in the exclusive possession of a tenant. It is provided in the Code, § 105-103, that "When the law requires one to do an act for the benefit of another, or to forbear the doing of that which may injure another, though no action be given in express terms, upon the accrual of damage the injured party may recover." While by its express terms the city ordinance adopted in 1923 did not apply to the Winecoff Hotel, which was built in 1913, yet that ordinance contained what was known as the building code, which defined a fire-resistive building. Section 90 thereof was in part as follows: "All interior shafts containing stairways required to be enclosed by section 45, and except in dwellings all shafts exceeding six feet in area, containing elevators, escalators, hoistways, chutes, ventilating ducts, or used for any other purpose shall be continuously enclosed with fire-resistive walls or partitions. ' . . Stairway and elevator shall not be permitted within the same shaft enclosure. All door openings into such shafts shall be protected by fire doors which shall be self-closing except for elevator doors." The quoted provisions of the city code are the requirements of a fire-resistive construction. Section 6-B of the 1941 ordinance provides that the ordinance shall not apply to fire-resistive buildings "as defined in the building code of the City of Atlanta." The evidence in this case describing the construction of the Winecoff Hotel shows that it did not meet the requirements of the building code for fire-resistive construction. The stairways were entirely open, whereas to be fire-resistive they must, under the code, be closed. Other details

could be enumerated demonstrating that as defined by the code this building was not fire-resistive; hence, it was subject to the terms and requirements of the 1941 ordinance. That ordinance requires that, even when vertical openings are enclosed, the building must have either a manual fire-alarm system, an automatic fire-alarm system, or automatic sprinklers. The Winecoff Hotel building had neither. In addition to the clear provision of the ordinance of the City of Atlanta, the testimony of O. M. Harper, the Chief Building Inspector of the City of Atlanta, would have authorized the trial judge, in the exercise of his discretion, to have found that the building was not fire-resistive within the meaning of that term as used in the building code. True, as contended by counsel for the plaintiffs in error, this witness first stated the opinion that the building structurally was fire-resistive within the meaning of that term in the building code, but the same witness further testified that the wooden baseboard was not fire-resistive and that, "as to how this building complied with the fire-resistive requirement of having fire doors in the hallway shaft, well, it did not have them, any fire doors. I mean that the building does not comply with the fire-resistive requirements of the 1924 building code or the earlier building code." It was shown in the record that, while the code was adopted in 1923, by its terms it became effective in 1924. The same witness further testified that he was familiar with the 1924 building code of the City of Atlanta, and that "the Winecoff Hotel does not meet in all respects the 1924 code. There are no fire doors. . . The stairway and elevator were within the same shaft enclosure." There was sufficient evidence before the trial judge to authorize his finding that Mrs. Annie Lee Irwin, the owner, was at the time of the fire violating the ordinance of the City of Atlanta, and that such violation was the proximate cause of the injuries. While the lease contract gave the exclusive possession to the lessees, it authorized the owner to enter upon the premises for the purpose of making any repairs or alterations required by law. Accordingly, it must be held that the evidence was sufficient to make out a case of prima facie liability against the owner, Mrs. Irwin. Nothing herein ruled is intended to imply that she may not be otherwise liable.

The writer wishes to make the statement, in which Justice Wyatt joins as also applicable to himself, that he dissented in

*Irwin* v. *Griffin,* ante, 456, not because he entertained the opinion that Mrs. Irwin could not be held liable, but solely because the opinion expressly limited its effect to the one ruling that upon a motion to remove the attachment the defendant would not be allowed to show, as a ground for removal, that as a matter of fact and law he was not liable to the plaintiff in attachment.

The only lien or claim to any of the property here involved which the petitioners assert is one against the funds involved in virtue of the summonses of garnishment, the attachments levied upon the building having been dismissed. It can not be denied that as a general rule creditors without a lien may not enjoin their debtors from disposing of property or obtain other extraordinary relief in equity, such as the appointment of a receiver. Code, § 55-106; *Cubbedge* v. *Adams,* 42 *Ga.* 124; *Mayer* v. *Wood,* 56 *Ga.* 427; *Stillwell* v. *Savannah Grocery Co.,* 88 *Ga.* 100, 142 (13 S. E. 963); *Guilmartin* v. *Middle Ga. &c. Ry. Co.,* 101 *Ga.* 565, 569 (29 S. E. 189); *Virginia-Carolina Co.* v. *Provident Society,* 126 *Ga.* 50 (54 S. E. 929); *Helmken* v. *Flood,* 138 *Ga.* 200 (75 S. E. 3); *Smith* v. *Manning,* 155 *Ga.* 209 (116 S. E. 813); *Continental Trust Co.* v. *Sabine Basket Co.,* 165 *Ga.* 591 (141 S. E. 664); *Hermann* v. *Mobley,* 172 *Ga.* 380 (158 S. E. 38); *Keeter* v. *Bank of Ellijay,* 190 *Ga.* 525 (9 S. E. 2d, 761); *Lawrence* v. *Lawrence,* 196 *Ga.* 204 (26 S. E. 2d, 283). The Constitution of this State, article 1, section 1, paragraph 2, declares: "Protection to person and property is the paramount duty of government, and shall be impartial and complete." It is the duty of the State government, through the instrumentality of the courts, to protect the property of a citizen and his right to possess and control it. This duty is not performed when the court, through the agency of a receiver, deprives the citizen of the possession and control of his property where he has not forfeited such right under some provision of the law. In *Jones* v. *Wilson,* 195 *Ga.* 310 (24 S. E. 2d, 34), after stating that the appointment of a receiver determined no rights between the parties and did not affect title in any way, and further stating that the purpose of a receivership was to preserve the property contested for until a final determination of the questions involved, it was said: "No matter how strong the apparent equity of the complainant may be, if there is no necessity for a receivership, the courts will not change the status until final decree." In the early case

of *Crawford* v. *Ross,* 39 *Ga.* 44, this court emphasized the seriousness of interference with the right of the citizen in the appointment of a receiver, and stated that such equitable relief ought to be granted only to prevent manifest wrong. It was further said: "The high prerogative act of taking property out of the hands of one, and putting it in pound, under the order of a judge, ought not to be taken, except to prevent manifest wrong, imminently impending." This language was repeated by this court in *Dozier* v. *Logan,* 101 *Ga.* 173 (28 S. E. 612), with the comment that, "If it were possible for the court, as at present constituted, to add anything to the emphasis of this language, it would do so without the slightest hesitation. The appointment of a receiver is recognized as one of the harshest remedies which the law provides for the enforcement of rights, and is allowable only in extreme cases, and under circumstances where the interest of creditors is exposed to manifest peril." All of this was quoted with approval in *Bainbridge Power Co.* v. *Ivey,* 173 *Ga.* 18 (159 S. E. 660). The legislature gave recognition to the seriousness of appointing a receiver and the need for caution when it adopted the Code, § 55-303, where it is said, "The power of appointing receivers should be prudently and cautiously exercised, and except in clear and urgent cases should not be resorted to." As to the general rule, see 45 Am. Jur., §§ 10 and 16; High on Receivers (4th ed.), § 406; 4 Pomeroy, Equity Jurisprudence (4th ed.), § 1533.

In *Stillwell* v. *Savannah Grocery Co.,* supra, it was held that no receiver should have been appointed without offering the defendant an opportunity to give bond and security, either for the forthcoming of the property or for the eventual condemnation money. It can not be contended that, where there exists an adequate remedy at law, a trial court can ever be justified in appointing a receiver. If, as contended, the petitioners have a valid lien upon the funds in virtue of the summonses of garnishment, the very statement of this fact is an assertion of the adequacy of a legal remedy. A lien alone, where there is no evidence that the property under such lien is in danger of loss, destruction, or injury, constitutes no reason whatever for the appointment of a receiver for such property.

We can not sustain the contention of the defendants in error that, since Life and Casualty Insurance Company of Tennessee has a claim upon all the property of the defendant, Mrs. Irwin,

and the petitioners have a lien upon the funds covered by the garnishment, a receiver should have been appointed in order to enforce the rights of the petitioners provided for in the Code, §§ 28-106 and 37-501, to compel the first lienholder to elect or satisfy his claim out of either the real estate or insurance money, thus leaving the other available to the petitioners. Any such right of the petitioners can be fully protected and enforced without the appointment of a receiver; hence, it constitutes no justification for a receivership. What are the extraordinary circumstances in the present case which the petitioners claim take it out of the general rule that creditors without a lien may not obtain the appointment of a receiver? The alleged fraudulent conveyance to the defendant corporation would not constitute a ground for the appointment of a receiver, unless it further appears that the property in the hands of the purchaser is in danger of destruction or injury. The proposal of the defendant corporation by its pleadings and the statement in open court remove any reasonable apprehension that any of the property involved would be either destroyed or injured or would not be available for the satisfaction of any judgment which the petitioners may obtain. The offer to give a bond for all the funds involved and to insure the preservation and protection of the real estate, and the defendants' consent to any decree or order of the court except the appointment of a receiver, was as much as could be legally required to prevent the appointment of a receiver. The owner of the property, when thus offering to the court insurance against injury to the opposing party from allowing the owner to retain possession of the property and avoid the expense of a receivership, is entitled under the Constitution and law to be allowed the privilege of retaining the possession of its property and avoid useless expense.

Counsel for the defendants in error have filed extensive briefs in this court, citing many decisions of this and other courts where receivers have been appointed. All of such decisions recognize the general rule, but sustain the appointment of a receiver because of extraordinary circumstances in the case at hand which take it out of the general rule. Necessarily the exceptions to the general rule cause each case to stand upon its own facts and depend somewhat upon the opinion and judgment of the judge to which it is presented as to whether or not it falls under the general rule.

Counsel have insisted so strongly that the present case is controlled by the decisions cited that we think it desirable to discuss and distinguish the most important of such cases. In *Orton* v. *Madden,* 75 *Ga.* 83, the general rule was recognized, but it was held that the petitioner, having a laborer's lien upon the property involved, was entitled to a receiver, and that the case did not fall within the general rule as cited in *Cubbedge* v. *Adams,* supra. In *Albany & Renssellaer Iron & Steel Co.* v. *So. Agri. Works,* 76 *Ga.* 135 (2 Am. St. R. 26), the general rule was recognized, but it was held that the case did not fall within that rule because the business was being carried on with goods that had not been paid for, and that the petitioners, not being parties to the mortgages on such goods, would be unable to prevent the foreclosure of the mortgages; and it was alleged in that case that the insolvent debtor had fraudulently transferred the property to one who was in complicity with him in the fraud and he was rapidly disposing of the property. It was further alleged that large supplies of goods were obtained with a view of making the assignment in question to enable the assignee to carry on the business of the assignor for an indefinite time, and that these goods were included in the assignment and in the mortgages made at the same time to the creditors, including the assignee. In *Cohen* v. *Meyers,* 42 *Ga.* 46, it was pointed out that the allegation, that the insolvent debtor had fraudulently transferred his stock of goods to a person who was in complicity with the fraud, and that he was rapidly selling the goods, constituted an exception to the general rule. In *Martin* v. *Burgwyn,* 88 *Ga.* 78 (13 S. E. 958), it was held that, where a seller had discovered the fraud and elected to rescind the sale, a receiver was authorized. In *Pendleton* v. *Johnson,* 85 *Ga.* 840 (11 S. E. 144), the appointment of a receiver was affirmed, though the petition was brought by unsecured creditors, upon the ground that the fraudulent sales for cash by an insolvent and secreting the money took the case out of the general rule. In *Hunter* v. *Bowen,* 137 *Ga.* 258 (73 S. E. 380), the petitioner, being a landlord, had title to the property involved, and for this reason was entitled to a receiver. In *Carter* v. *Johnson,* 156 *Ga.* 207 (119 S. E. 22), the petitioner, being the holder of purchase-money notes, had an interest in the property. The appointment of a receiver was affirmed in *Goodroe* v. *C. L. C. Thomas Warehouse,* 185 *Ga.* 399 (195 S. E.

199), which was a suit for a tort, upon the ground that the facts and circumstances brought the case under an exception to the general rule. In *Jones* v. *Proctor,* 195 *Ga.* 607 (24 S. E. 2d, 779), the application for a receiver was by a devisee who obviously had an interest in the property, and the property was deteriorating because the executor was without funds with which to protect it. *Briar-cliff Inc.* v. *Kelley,* 198 *Ga.* 390 (31 S. E. 2d, 586), merely affirmed a judgment on demurrer where the petition sought other relief in addition to the appointment of a receiver, and that decision did not have the concurrence of all the Justices.

A careful examination of all the authorities cited and the facts and circumstances in the present case convince us that the appointment of a receiver was an abuse of discretion. There was no serious danger of destruction or injury to any of the property involved, and whatever ground for apprehension of danger might have existed, the offer of the owner to give the bond was sufficient to remove it. One of the highest privileges of a citizen is the full enjoyment in conformity with the law of the possession and use of his property. The fact that he might be poor or even insolvent will never justify, without more, a court of equity, before trial and an adjudication of disputed issues in the manner provided by our law, in depriving him of this right and subjecting his property to unnecessary expense. The sole criticism in the petition of the conduct of the lessees since the fire is the allegation that they had failed to exercise the right. conferred upon them in the lease to require the restoration of the. building. On this point the uncontradicted evidence is the letter by counsel for the lessees to the owner demanding restoration of the building. There is no evidence of the slightest misconduct upon the part of the lessees subsequently to the fire or the remotest danger to their property; hence, there exists no basis whatever for the appointment of a receiver for the property of the lessees.

It follows that the court erred in the appointment of a receiver, and the judgment in case No. 15850 is reversed on condition that the defendant, The Arlington Corporation, give the bond offered in its amendment of February 21, 1947, the bond to be approved by the court, and that the said defendant comply with the other offers made in the said amendment; otherwise, the judgment to stand affirmed. The judgment in case No. 15861 is reversed.

*Judgment reversed on condition in case No. 15850.*

*Judgment reversed in case No. 15861. Jenkins, Chief Justice, Bell, Wyatt, Head, and Candler, Justices, and Boykin, Judge, concur.*