While it is recognized that creditors without a judgment or lien are not, as a general rule, entitled to the appointment of receivers in the absence of other facts and circumstances authorizing equitable intervention, yet the evidence in this case as it is now presented (as set forth in the statement of facts) was sufficient to bring the case from within the operation of the general rule, and the order of the lower court appointing receivers at the instance of tort claimants who had established prima facie liability will not be disturbed. Cohen v. Meyers, 42 Ga. 46; Pendleton v. Johnson, 85 Ga. 840 (11 S.E. 144); Goodroe v. C. L. C. Thomas Warehouse, 185 Ga. 399 (195 S.E. 199); Irwin v. Willis, 202 Ga. 463 (43 S.E.2d 691). Nor will the defendant be heard to complain because the trial court voluntarily conditioned its order granting the receivership upon the defendants' giving a specified bond in lieu thereof, the amount and terms of which bond are not excepted to.
Judgment affirmed in both cases. All the Justices concur, except Wyatt, J., who took no part in the consideration or decision of this case.
 Nos. 16043, 16044. JANUARY 15, 1948.
 STATEMENT OF FACTS BY JENKINS, CHIEF JUSTICE.
When these two cases were previously before this court (Geele v. Willis, 202 Ga. 463, 43 S.E.2d 691; Geele v.Torbert, 202 Ga. 482, 43 S.E.2d 702), it was pointed out by this court that "The sole criticism in the petition of the conduct of the lessees since the fire is the allegation that they had failed to exercise the right conferred upon them in the lease to require the restoration of the building," and this court thereupon unconditionally reversed the judgment of the trial court in appointing receivers for the property of said lessees. The facts upon which the writ of error in the instant case is based are fully and clearly set forth in the order of the trial judge here excepted to as follows: "After the court on February 21, 1947, appointed a receiver for the property of A. F. Geele Sr., A. F. Geele Jr., and R. E. O'Connell, as partners trading and doing business as the Winecoff Hotel Company, *Page 268 
the plaintiffs filed separate amendments to their petition, asking that a general receivership be appointed for said individuals for their individual property, as well as the properties of the Winecoff Hotel Company, and alleged certain matters as to insolvency of said individuals and made certain charges as to their selling and disposing of their assets for the purpose of hindering, delaying, and defrauding creditors for the purpose of preventing the enforcement of any judgment that might be obtained against them. Many of the matters charged against these individuals were alleged to have occurred subsequently to the appointment of receivers in February, and had reference to the conduct of said individual defendants as to matters that were alleged to have been discovered subsequently to the appointment of receivers. The prayers are that the court appoint receivers to take charge of all of the property now in the hands of the receivers heretofore appointed by the court and all other property of the defendants, Geele, Geele, and O'Connell, and hold the same under such direction as the court might give for the benefit of petitioners and all other parties, and that certain named parties and corporations be made parties defendant, and for cancellation of a certain transfer and assignment of two fire insurance policies."
The result of the hearings on the above applications has been summarized by the lower court in its order as follows: "That within a few days after the hotel fire the named defendants made an agreement to sell certain items of machinery and equipment of the hotel to one W. J. Folsom, and after the grant of a temporary restraining order in one of these cases, restraining said defendants from conveying away their property, they delivered these assets to Folsom for an approximate consideration of $4000, which was paid to them after the restraining order was granted. That within a few days after the hotel fire they sold the liquor stock, inventoried at the value of $18,000, to one M. J. Daniels for the sum of $12,500. The proceeds of the sale were handled in this manner: The named individuals ostensibly operated the Central Hotel Company in Macon, Georgia, whose common stock was owned as follows: Thirty shares were owned by the wife of M. J. Daniels, the balance by the wives of the defendants Geele. The Central Hotel Company owed M. J. Daniels $7200. *Page 269 
Out of the purchase-money for the liquors, this indebtedness of Daniels was paid and the balance of $4500 was given by Daniels to the named defendants, and thereafter Geele Jr. lent to his wife the sum of $2666.67, for which she in turn gave him a promissory note, and she used the proceeds of this loan to purchase ten shares of the stock held by Mrs. Daniels and also a portion of the money to purchase from him one-third of the promissory note which he held against the hotel company. Geele Sr. took his share of $2666.67 and lent it to his wife, who gave him a promissory note, and she used the proceeds in a manner similar to Mrs. Geele Jr. O'Connell lent to one M. Padish, a lady who resided at Chicago, his share of $2666.66, and she gave O'Connell her note, and she used the proceeds of the note in the manner that the other two Mrs. Geeles employed. The difference in cash was distributed between the three partners, and they testified that this money was used for living expenses and for expenses in connection with the operation and maintenance of the Winecoff Hotel prior to the delivery of the hotel property to the receivers. A considerable quantity of linens at the Winecoff was sent to a laundry for the purpose of being cleaned, and several thousand dollars worth of Winecoff Hotel furniture was stored at another place, and two truckloads of hotel equipment, supplies, etc., consisting of about one hundred cartons, were stored in a warehouse in Atlanta under the name of `R. Lee.' One of the partners estimated the value of these properties at $3000. At the time the receivers took possession of the assets of the Winecoff Hotel property, the partners did not disclose to them the stock of liquors and its disposition, nor the location of the linens with the laundry, nor the hotel furniture that had been stored, nor the fact of the articles on storage in the warehouse, nor the fact that certain equipment had been sold and delivered to Folsom. It was only after diligent and exhaustive search by the receivers that these properties were discovered and these transactions subsequently to the fire were disclosed. Before the appointment of receivers in February there was no evidence before the court as to the fire insurance policies held by the partnership, but after the receivers took charge they discovered that the partnership held two policies of fire insurance with the Caledonian Insurance Company, one for the sum of $125,000, and the other for the sum of $25,000, *Page 270 
both of which had been transferred and assigned to their attorneys, the transfer and assignment having been made after the court had passed a restraining order enjoining the partners from transferring or assigning or conveying away any fire-insurance policies. The receivers by their investigation also discovered that the partners owned and operated a hotel in Danville, Kentucky, known as the Gilcher Hotel under a lease which expires in August, 1949, and that on December 28, 1946, they had conveyed by a chattel mortgage all of the furniture, equipment, and property owned by them in the operation of the hotel, including the lease, to a bank to secure a loan of $14,000, the proceeds of which they testified they divided among themselves. Though it appears that Geele, Geele, and O'Connell operate the Central Hotel at Macon, the lease is to the Central Hotel Company, the majority of which stock is owned by the wives of the defendants Geele, and the remainder is owned by a Miss Padish of Chicago, a friend of O'Connell. The evidence does not disclose that either the Geeles or O'Connell have any other properties, real of personal, or interest therein, other than [what] has been enumerated above. As to the money in the bank, which was approximately $14,000 at the time of the fire, prior to the appointment of receivers this account had been tied up by garnishment. At the hearing it also developed that some ten or more judgments totaling several thousand dollars have been rendered against the partners and an entry of nulla bona has been entered on one fi. fa., and two of the judgment creditors have intervened in these cases. At the hearing before the appointment of receivers in February, there was no evidence as to these judgments. As to the lease on the Winecoff Hotel, it is not apparent what value, if any, this lease has at the present time, due to the fact that the hotel has not been repaired and no steps have been taken to restore it, and it is problematical as to whether this lease has any value or not, it being evident that the loan on the hotel property is in default and will be subject to foreclosure. From this evidence it is clear that of the assets that the partners owned at the time of the fire in December, 1946, they have disposed of personal property of value more than $25,000; that of the $225,000 of fire insurance they have transferred and assigned policies totalling $150,000, and executed a chattel mortgage *Page 271 
on their properties in the Gilcher Hotel in Danville, Kentucky, for an amount of money which appears to be in excess of the value of the property placed by them at the time of the expiration of the lease. The court is of the opinion that the evidence on this hearing shows that the three named partners are insolvent, and that their acts in selling their properties and in mortgaging and assigning other rights and interests support the conclusion that this was done for the purpose of hindering, delaying, and defrauding their creditors, and preventing their creditors from having recourse to these properties if they obtained judgments in these cases."
The trial court thereupon granted the prayers upon the plaintiff's amendments for the appointment of a general receivership over the properties of the defendants, Geele, Geele, and O'Connell, individually and as partners trading under the name of Winecoff Hotel Company, such appointment being conditioned as follows: "Provided, however, the said A. F. Geele Sr., A. F. Geele Jr., and R. E. O'Connell, as individuals and as partners trading under the name of Winecoff Hotel Company, may within ten days from the date of this order dissolve said receivership by complying with the following conditions." The amount of bond was set at $40,000, and the terms and conditions of said bond were set forth, none of which are excepted to in the instant case.
Error is assigned upon the following grounds: "(1) The said order was illegal and contrary to law. (2) The said order was contrary to the evidence adduced at said hearing and without evidence to support it, and there was no evidence adduced at said hearing upon which said order could have been legally predicated. (3) It affirmatively appears from the pleadings and evidence in said case that the plaintiff, a tort claimant without judgment or lien, was not such a claimant or creditor of the defendants, Arthur F. Geele Sr., Arthur F. Geele Jr., R. E. O'Connell, and the Winecoff Hotel Company, as to entitle him upon the evidence adduced at said hearing to the appointment of a receiver for said defendants or to entitle him to the restraining order and injunctions as prayed in his petition and as granted in the order of August 22, 1947, for which reason the court erred in entering said order. (4) It affirmatively appears from the evidence in said case that the defendants . . are not insolvent, and that the transfers *Page 272 
complained of by the plaintiff were not made for the purpose of hindering, delaying, or defrauding creditors of said defendants. (5) It affirmatively appears from the pleading in said case and the evidence adduced at said hearing that the plaintiff was not entitled to equitable relief, for the reason that the plaintiff had a clear, complete, and adequate remedy at law against the defendants . . and that for this reason the court erred in entering the order of August 22, 1947. (6) The said Bond Almand, Judge of the Superior Court of Fulton County, in appointing said receivers for the defendants . . and in granting said restraining orders and in enjoining said defendants, abused his judicial discretion, for the reason that the said order was illegal and contrary to law, and contrary to the evidence adduced at said hearing, and without evidence to support it." The lower court provided by an amendment to its order as follows: "The court does not by this order intend to make a conclusive finding binding on the parties that the Caledonian Insurance policies are `fire' insurance policies, or that their assignments to said law firm and E. D. Smith were made for the purpose of hindering, delaying, or defrauding their creditors and preventing their creditors from having recourse against the proceeds of these policies. These matters are left open for future determination by the court or jury, as the case may be."