21584.　K. GORDON MURRAY PRODUCTIONS, INC. v. FLOYD *et al.*

ARGUED MARCH 13, 1962—DECIDED APRIL 7, 1962—
REHEARING DENIED APRIL 20, 1962.

*Thomas E. Moran,* for plaintiff in error.

*J. C. Savage, Edwin L. Sterne, Robert F. Lyle,* contra.

DUCKWORTH, Chief Justice. ■ Based upon *Code* § 37-120,

and *Mayor &c. of Carrollton v. Chambers*, 215 Ga. 193 (109 SE2d 755), and similar cases, all of which state the law that equity will not take cognizance of a plain legal right where an adequate and complete remedy is provided by law, counsel for the city contend that this petition shows no right to the equitable relief which it seeks. We reject this contention for two reasons, to wit: (1) the remedy provided in the ordinance is not even law if the petitioner's constitutional attack is sustained. *Dennison Manufacturing Co. v. Wright*, 156 Ga. 789 (120 SE 120); *Milam v. Adams*, 216 Ga. 440 (117 SE2d 343); and (2) even if the ordinance is constitutional, the remedy which it affords, or any other remedy, is not adequate or available to this petitioner, since the ordinance applies only to exhibitors of pictures and not to distributors, and petitioner is a distributor only. The petition asserts that exhibitors in Atlanta have been valuable customers of the petitioner, and at least some of them now wish to contract for its picture but because of the censorship ordinance and statements of the censor that the picture in question, which petitioner alleges is not obscene, will not be approved, its potential customers refuse to contract with it, and in this way its business is being destroyed, and petitioner can not require the exhibitors to resist or violate the ordinance or in any way obtain a court decision as to its constitutionality. In this situation its only adequate remedy is in equity, and it is entitled to maintain this action for that purpose. *Great Atlantic & Pacific Tea Co. v. City of Columbus*, 189 Ga. 458 (6 SE2d 320); *City of Albany v. Lippitt*, 191 Ga. 756 (13 SE2d 807); *City of Atlanta v. Universal Film Exchanges*, 201 Ga. 463 (39 SE2d 882); *Moultrie Milk Shed v. City of Cairo*, 206 Ga. 348 (57 SE2d 199).

■ If the attack upon the portion of the city charter (Ga. L. 1915, p. 480, at pp. 493, 494) which authorizes the city to adopt the censorship ordinance, and upon the ordinance adopted pursuant thereto, which contends that in providing for examination of all motion pictures by the censorship board and forbidding the showing of any picture without first obtaining a permit from the city, thereby imposing a prior restraint of speech in violation of the First Amendment (*Code* § 1-801) and the Fourteenth

Amendment (*Code* § 1-815) of the U. S. Constitution and also *Code Ann.* § 2-115 of the State Constitution (Const. of 1945), is sustained as to either Constitution, the charter provision as well as the ordinance are void, and it was error to dismiss the petition on demurrer. This would render it unnecessary to rule upon the other grounds of attack. Motion pictures are within the First and Fourteenth Amendments' basic protection. Joseph Burstyn, Inc. v. Wilson, 343 U. S. 495 (72 SC 777, 96 LE 1098). By that decision motion pictures are afforded the full protection constitutionally guaranteed to all speech or press. That court noted no factors peculiar to motion pictures that would authorize abridgment by censure or otherwise which was interdicted by the Constitution. The relevant portion of the First Amendment is as follows: "Congress shall make no law . . . abridging the freedom of speech, or of the press." If sound rules of construction are adhered to, this sentence of the Constitution can not be lifted from the whole Constitution and construed without consideration of the entire document including the preamble. If it could be isolated and construed alone, its absolute phrasing would forbid any restraint whatever. But in construing it the Supreme Court should keep in mind such declarations of the purpose of the Constitution found in the preamble as "establish Justice, insure domestic Tranquillity," and "secure the Blessings of Liberty to ourselves and our Posterity." Any proper construction of the First Amendment must harmonize with these expressed purposes. In Gompers v. Bucks Stove & Range Co., 221 U. S. 418 (31 SC 492, 55 LE 797), it is said: "An order of a court of equity, restraining defendants from boycotting complainant by publishing statements that complainant was guilty of unfair trade, does not amount to an unconstitutional abridgment of free speech; the question of the validity of the order involves only the power of the court to enjoin the boycott. . . Where conditions exist that justify the enjoining of a boycott, the publication and use of letters, circulars and printed matter may constitute the means of unlawfully continuing the boycott and amount to a violation of the order of injunction." Again in Schenck v. United States, 249 U. S. 47, at p. 52, it is said: "The most stringent

protection of free speech would not protect a man in falsely shouting fire in a theatre and causing a panic. It does not even protect a man from an injunction against uttering words that may have all the effect of force." And in Near v. Minnesota, 283 U. S. 697 (51 SC 625, 75 LE 1357), at pp. 715, 716, we find the following: "The objection has also been made that the principle as to immunity from previous restraint is stated too broadly, if every restraint is deemed to be prohibited. That is undoubtedly true; the protection even as to previous restraint is not absolutely unlimited. . . On similar grounds, the primary requirements of decency may be enforced against obscene publications. The security of the community life may be protected against incitements to acts of violence and the overthrow by force of orderly government. The constitutional guaranty of free speech does not protect a man from an injunction against uttering words that may have all the effect of force." We will quote from one more Supreme Court decision which further shows that prior restraint of abuses of the freedom of speech is sanctioned. In Roth v. United States, 354 U. S. 476 (3) (77 SC 1304, 1 LE2d 1498), it is stated that: "Obscenity is not within the area of constitutionally protected freedom of speech or press—either (1) under the First Amendment, as to the Federal Government, or (2) under the Due Process Clause of the Fourteenth Amendment, as to the States." And again at page 483 the opinion states: "In light of this history, it is apparent that the unconditional phrasing of the First Amendment was not intended to protect every utterance. This phrasing did not prevent this court from concluding that libelous utterances are not within the area of constitutionally protected speech. Beauharnais v. Illinois, 343 U. S. 250, 266." There is nothing in the phrasing of the First Amendment, if standing alone, that would have justified the foregoing decisions which clearly sanction prior restraint of abuses which is an abridgment. But when taken as it must be as an harmonious part of the entire Constitution, and in light of history, a construction is demanded that the First Amendment, by the words "speech" and "press," means only speech and press outside of infringement of the rights of others.

The only kind of speech that any of the foregoing decisions say may be subjected to prior restraint is malevolent, obscene or an abuse of the freedom, and this is allowed because such speech is not protected. On May 26, 1952, in Joseph Burstyn, Inc. v. Wilson, 343 U. S. 495, supra, at p. 503, Mr. Justice Clark wrote: "The statute involved here does not seek to punish, as a past offense, speech or writing falling within the permissible scope of subsequent punishment. On the contrary, New York requires that *permission to communicate ideas be obtained in advance from state officials who judge the content of the words and pictures sought to be communicated*. This court recognized many years ago that such a *previous restraint is a form of infringement* upon freedom of expression *to be especially condemned*." (Italics ours.) But on January 23, 1961, in the case of Times Film Corp. v. Chicago, 365 U. S. 43 (81 SC 391, 5 LE2d 403), that court in another opinion written by Mr. Justice Clark held that a law which requires submission of all motion pictures for examination or censorship prior to their public exhibition "is not void on its face as violative of the First and Fourteenth Amendments." Therefore, we must follow this last pronouncement and ignore many previous contrary decisions and hold that the attack upon the charter and ordinance upon the ground that in forbidding the showing of any picture without its having been approved by the censor offends the United States Constitution, is without merit.

We now look to our State Constitution, art 1, sec. 1, par. 15 (*Code Ann.* § 2-115; Const. of 1945), to see if the laws here under attack offend it by providing a prior restraint. While the following portion of the above Code section, "No law shall ever be passed to curtail, or restrain the liberty of speech, or of the press; any person may speak, write and publish his sentiments, on all subjects" is absolute in phraseology, and when isolated from all other provisions of the same Constitution would absolutely prohibit any restraint of speech or press regardless of its violation of the constitutional rights of others, including the government. But all sound rules of construction forbid such isolation and demand that it be construed in connection with the entire Constitution, and particularly the concluding

words of the same paragraph which are, "being responsible for the abuse of that liberty," and the second paragraph (*Code Ann.* § 2-102; Const. of 1945), which is: "Protection to person and property is the paramount duty of government, and shall be impartial and complete." When thus construed it is absolute as to what it protects, but it does not protect an "abuse of that liberty." Any invasion of the constitutional rights of others or the government would be an "abuse of that liberty," and is not constitutionally protected. The decisions of this court clearly show that an "abuse of that liberty" as expressed in our Constitution does not come within the speech or press which is protected. In *Fitts v. City of Atlanta,* 121 Ga. 567 (49 SE 793, 67 LRA 803, 104 ASR 167), it was held that a municipality could prevent holding a meeting at which speaking was intended, in the public streets without a city permit. In *McGill v. State of Georgia,* 209 Ga. 500 (74 SE2d 78), which upheld the absolute right of the press to publish matters that violated no constitutional rights of others, this court held that the Constitution did not protect abuses of the liberty therein guaranteed. In *Ellis v. Parks,* 212 Ga. 540 (93 SE2d 708), this court held that although picketing was a form of speech, protected by the Constitution, it could be enjoined when, as there, its purpose was to injure the employer and to aid an unlawful strike. And in *Atlanta Newspapers, Inc. v. Grimes,* 216 Ga. 74 (114 SE2d 421), this court held that the free-speech clauses of the State and Federal Constitutions did not prohibit an order of a superior court judge forbidding taking pictures and making recordings within a defined area during the progress of the trial of a criminal case.

As to the constitutional right to use private property for malevolent purposes this court held in *Hornsby v. Smith,* 191 Ga. 491 (13 SE2d 20, 133 ALR 684), that the owner of land could not erect a fence thereon which injured his neighbor for no useful purpose, but solely to hurt his neighbor. The Supreme Court held in American Bank & Trust Co. v. Federal Reserve Bank, 256 U. S. 350 (41 SC 499, 65 LE 983), that even though the holder of a properly endorsed check had the right to present it to the bank upon which it was drawn for payment, yet where, as there, such holder, the National Bank, held checks

until they accumulated to a total that would, because of want of ready cash, embarrass the State bank upon which they were drawn, solely for the malevolent purpose of hurting the State bank, an injunction would lie to prevent such malicious conduct.

Thus we have an abundance of decided cases that sanction restraint of abuses of speech and property. In none of them is the constitutionally protected speech or press held subject to curtailment, restraint or abridgment. Only the abuses of the liberty are held subject to restraint and that is justifiable only because they enjoy no protection under the Constitution. Since we rule that speech or press that is not an abuse of the liberty under *Code Ann.* § 2-115, is protected by that paragraph of the State Constitution, it follows, and we so rule, that as to it all interference therewith is absolutely interdicted by the Constitution. This means that no interference, no matter for how short a time nor the smallness of degree, can be tolerated.

The rulings hereinbefore made, together with the facts of this case confront this court with the solemn and even awesome duty of deciding whether or not government can constitutionally invade the protected right for one second in any conceivable manner as a means of discovering and suppressing such speech or press as is an "abuse of that liberty" and hence is unprotected and has no immunity. This question strikes at the very heart of our liberties. Proper performance of the paramount duty of government to furnish impartial and complete protection of person and property as commanded by the Constitution demands that rights in both categories be energetically, impartially and completely protected. No informed American would wish to have a controlled press where an agent of the government is permitted to look over the shoulder of the publisher and dictate what shall be printed. Indeed, intrusion even for the shortest time and in the most superficial manner would be an invasion of his constitutionally protected liberty. But this in no remote degree shields any "abuse of that liberty" from the reach of any process devised by government to suppress or punish such abuses when done without the slightest infringement of the constitutionally protected speech or press. This does not mean that the house may be burned in order to get the rats out of it.

It follows that the charter and ordinance provision, requiring inspection of the protected as well as the unprotected pictures, and also requiring a permit from the city authorities before any picture can be exhibited in the theatre, violate the State Constitution (*Code Ann.* § 2-115) and are void. The words of the Constitution "no law shall ever be passed to curtail or restrain" are irreconcilable with any law, including a city ordinance, that does curtail or restrain. The far reaching effect of this decision does not escape our notice or concern. As individual citizens we hate to see the youth of this State, who will govern the State in the future, subjected to all the evil influence that obscene pictures might exert upon them. But as trusted judges we have no alternative to saying, thus sayeth the Constitution, and we cheerfully obey. It would seem that legislative wisdom could devise a law containing no censorship that would conform to the Constitution as we have construed it and at the same time afford a large degree of protection against obscene pictures. A severe penalty for exhibiting an obscene picture with a provision that if it had been voluntarily submitted to a board created by the law for making such voluntary inspections, and had been judged not to be obscene by that board the courts should give serious consideration to this demonstrated lack of intent when imposing sentence, might be within the bounds of constitutionally permissible legislation.

The petition alleged grounds for the injunctive relief, and it was error to sustain the demurrer to the petition as amended.

*Judgment reversed. All the Justices concur, except Candler, J., who dissents. Mobley and Quillian, JJ., concur specially.*

MOBLEY, Justice, concurring in the judgment. I concur in the judgment of the court but not for the reason given in the majority opinion. In Chaplinsky v. New Hampshire, 315 U. S. 568, 571-72 (62 SC 766, 86 LE 1031), the court held that "there are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem. These include the lewd and obscene, the profane, the libelous, and the insulting or 'fighting' words—those which by their very utterance inflict injury or tend to incite an immediate breach of the peace."

The enumerated classes of speech are not within the area of constitutionally protected speech or press. Roth v. United States, 354 U.S. 476, 485 (77 SC 1304, 1 LE2d 1498). It is not only the privilege but the duty of the City of Atlanta to protect its people against the dangers of obscenity in the public exhibition of motion pictures and in other classes of speech which are not protected. I do not agree that regardless of the extent of such evil, previous restraint cannot be justified. As pointed out in Times Film Corp. v. Chicago, 365 U.S. 43, 49-50 (81 SC 391, 5 LE2d 403), the Supreme Court of the United States recognized in Joseph Burstyn, Inc. v. Wilson, 343 U.S. 495 (72 SC 777, 96 LE 1098) that " 'capacity for evil . . . may be relevant in determining the permissible scope of community control,' at p. 502, and that motion pictures were not 'necessarily subject to the precise rules governing any other particular method of expression. Each method,' we said, 'tends to present its own peculiar problems.' At 503. Certainly petitioner's broadside attack does not warrant, nor could it justify on the record here, our saying that—aside from any consideration of the other 'exceptional cases' mentioned in our decisions—the State is stripped of all constitutional power to prevent, in the most effective fashion, the utterance of this class of speech."

It is in my opinion a reasonable exercise of the police power of the State to require that motion pictures be submitted to a board of censors prior to their showing so that those which are obscene or otherwise within that class of speech not protected by the Constitution may be barred from showing. However, the charter amendment, Ga. L. 1915, p. 493, and the ordinances adopted pursuant thereto go beyond this, as the Board of Censors is empowered to prohibit the display of any picture without a permit from that Board and they may reject any picture or scene which would in their judgment affect the peace, health, morals and good order of the city. Under the charter amendment, the board is authorized to reject not just those pictures which "adversely" affect the peace, health, etc. of the people, but also those which might have a beneficial effect. They may not constitutionally prohibit the showing of any pictures except those which come within one of the classes of speech not within

the protection of the free speech provision of the Constitution. Furthermore, the General Assembly has not prescribed clear and definite procedure to guide the action of the city in the performance of the power granted as is required, to meet the due process clauses of the Federal and State Constitutions. See *City of Atlanta v. Southern Ry. Co.*, 213 Ga. 736, 738 (101 SE2d 707). I am authorized to state that Quillian, Justice, concurs in this opinion.

CANDLER, Justice, dissenting. Freedom of speech is not an absolute right under the Constitution of this State or under the Constitution of the United States. *Atlanta Newspapers, Inc. v. Grimes*, 216 Ga. 74 (114 SE2d 421); Times Film Corporation v. City of Chicago, 365 U.S. 43 (81 SC 391, 5 LE2d 403). Freedom of speech as guaranteed both by the Constitution of this State and of the United States does not preclude a municipality from protecting its people against the dangers resulting from the public display of obscene or licentious pictures or other pictures which may adversely affect the peace, health, morals, and good order of such municipality; and to prevent the evil resulting therefrom prior restraint is permissible. Near v. Minnesota, 283 U.S. 697, 715 (51 SC 625, 75 LE 1357); Chaplinsky v. New Hampshire, 315 U.S. 568, 571, 572 (62 SC 766, 86 LE 1031, 1035); Roth v. United States, 354 U.S. 476 (77 SC 1304, 1 LE2d 1498). By the 1915 censorship act the legislature conferred police power on the City of Atlanta to regulate by ordinance the places where moving pictures are shown and the right to prohibit the display of obscene or licentious pictures or other pictures which might adversely affect the peace, health, morals, and good order of the city, and it is universally conceded that police power includes everything essential to public safety, health, and morals. As authority for this statement, see Lawton v. Steele, 152 U.S. 133 (14 SC 499, 38 LE 385); *Morris v. City of Columbus*, 102 Ga. 792 (30 SE 850, 42 LRA 175, 66 ASR 243). I do not consider any other attack which the petitioner makes on the 1915 amendment to the city's charter or the ordinance adopted pursuant thereto as being meritorious. I would affirm the judgment sustaining a general demurrer to the petition.