## 43677. HEUBLEIN, INC. v. STATE OF GEORGIA et al.
(351 SE2d 190)

MARSHALL, Chief Justice.

This is an action for declaratory judgment and injunctive relief by Heublein, Inc., an importer of alcoholic beverages into this state. The action is being prosecuted against Georgia's taxing authorities. Heublein seeks a declaration of unconstitutionality with respect to Georgia statutes providing for an import tax on all distilled spirits and table wines imported for use, consumption, or final delivery into this state. OCGA §§ 3-4-60 (2); 3-6-50 (b). Heublein argues that this import tax violates the Equal Protection and Commerce Clauses. The superior court upheld the constitutionality of the tax, and Heublein appeals.

OCGA §§ 3-4-60 and 3-6-50 were rewritten by Georgia Laws 1985, p. 665 et seq. As rewritten, OCGA § 3-4-60 (1) imposes "upon the first sale, use, or final delivery within this state of all distilled spirits an excise tax in the amount of 50 cents per liter and, upon the first sale, use, or final delivery within this state of all alcohol, an excise tax in the amount of 70 cents per liter . . ." OCGA § 3-4-60 (2) imposes "upon the importation for use, consumption, or final delivery into this state of all distilled spirits an import tax in the amount of 50 cents per liter and, upon the importation for use, consumption, or final delivery into this state of all alcohol, an import tax in the amount of 70 cents per liter . . ."

OCGA § 3-6-50 (a) imposes "on the first sale, use, or final delivery within this state of all table wines an excise tax in the amount of 11 cents per liter . . ." OCGA § 3-6-50 (b) imposes "upon the importation for use, consumption, or final delivery into this state of all table wines an import tax in the amount of 29 cents per liter . . ." OCGA § 3-6-50 (c) imposes "upon the first sale, use, or final delivery within this state of all dessert wines an excise tax in the amount of 27 cents per liter . . ." OCGA § 3-6-50 (d) imposes "upon the importation for use, consumption, or final delivery into this state of all dessert wines an import tax in the amount of 40 cents per liter . . ."

In addition, all of these excise and import taxes impose "a proportionate tax at the same rate on all fractional parts of a liter."

1. The resolution of Heublein's constitutional claims is based on an analysis of a line of United States Supreme Court decisions commencing with *State Bd. of Equalization v. Young's Market Co.*, 299 U. S. 59 (57 SC 77, 81 LE 38) (1936).

(a) In *Young's Market Co.*, supra, the plaintiffs were wholesale sellers within the State of California of beer imported from out of state. They were arguing that a California statute and implementing regulations imposing an importer's license fee for the privilege of importing beer into California violated the Commerce Clause by dis-

criminating against the wholesale seller of imported beer in favor of the wholesale seller of beer locally brewed. They also argued that the importer's license fee was discriminatory in violation of the Equal Protection Clause of the Fourteenth Amendment.

The Supreme Court held that the importer's license fee was valid under § 2 of the Twenty-first Amendment, which is the constitutional amendment that repealed Prohibition. Section 2 provides: "The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited."

The Court acknowledged that prior to adoption of the Twenty-first Amendment, imposition of the importer's license fee "obviously" would have been unconstitutional as a "direct burden on interstate commerce." 299 U. S. at p. 62. However, the Court held that under the broad language of the Twenty-first Amendment, the right under the Commerce Clause to freely import from one state to another had been "abrogated . . . so far as concerns intoxicating liquors." Id. The Court further held that "[t]he claim that the statutory provisions and the regulations are void under the equal protection clause may be briefly disposed of. A classification recognized by the Twenty-first Amendment cannot be deemed forbidden by the Fourteenth." Id. at p. 64.

In addition, the Court held that "we cannot say that the exaction of a high license fee for importation may not, like the imposition of the high license fees exacted for the privilege of selling at retail, serve as an aid in policing the liquor traffic." Id. at p. 63.

(b) Two years later in *Mahoney v. Joseph Triner Corp.*, 304 U. S. 401 (58 SC 952, 82 LE 1424) (1938), the Court sustained the constitutionality of a Minnesota statute prohibiting the importation into the state of certain categories of intoxicating liquors. The Court held this statute to be constitutional, notwithstanding the discrimination arising in favor of liquor processed within the state. In so holding, the Court stated, "[s]ince the adoption of the Twenty-first Amendment, the Equal Protection Clause is inapplicable to imported intoxicating liquor." 304 U. S. at p. 401 (1).

(c) However, in subsequent cases, the Court has not literally followed the broad holding that the right under the Commerce Clause to freely import from one state to another has been abrogated so far as concerns intoxicating liquors. These subsequent cases, which are discussed, infra, generally involve instances in which: (1) the challenged state liquor law did not, in fact, regulate the "transportation or importation" into the state of intoxicating liquors "for delivery or use therein," as specified in the Twenty-first Amendment; or (2) the challenged state liquor law trenched upon some preeminent federal power. As to the Equal Protection Clause, at least in the area of indi-

vidual rights, the Court has completely abandoned the view that state laws involving the regulation of intoxicating liquors within the state's borders are exempt from equal-protection challenges.

Thus, in *Collins v. Yosemite Park &c. Co.*, 304 U. S. 518 (58 SC 1009, 82 LE 1502) (1938), it was held that the Twenty-first Amendment did not give California the power to prevent the shipment into and through her territory of liquor to be distributed and consumed in a national park. In *Hostetter v. Idlewild Bon Voyage Liquor Corp.*, 377 U. S. 324 (84 SC 1293, 12 LE2d 350) (1964), it was held that the Commerce Clause prohibited New York from interfering with the tax-free sales of liquor to departing international airline travelers at a New York airport for delivery at the traveler's foreign destination. In *Hostetter*, the Court stated:

"This Court made clear in the early years following adoption of the Twenty-first Amendment that by virtue of its provisions a State is totally unconfined by traditional Commerce Clause limitations when it restricts the importation of intoxicants destined for use, distribution, or consumption within its borders . . .

"This view of the scope of the Twenty-first Amendment with respect to a State's power to restrict, regulate, or prevent the traffic and distribution of intoxicants within its borders has remained unquestioned. See *California v. Washington*, 358 U. S. 64 . . . *Ziffrin, Inc. v. Reeves*, 308 U. S. 132 . . .

"To draw a conclusion from this line of decisions that the Twenty-first Amendment has somehow operated to 'repeal' the Commerce Clause wherever regulation of intoxicating liquors is concerned would, however, be an absurd oversimplification. If the Commerce Clause had been *pro tanto* 'repealed,' then Congress would be left with no regulatory power over interstate or foreign commerce in intoxicating liquor. Such a conclusion would be patently bizarre and is demonstrably incorrect . . .

"Both the Twenty-first Amendment and the Commerce Clause are parts of the same Constitution. Like other provisions of the Constitution, each must be considered in the light of the other, and in the context of the issues and interests at stake in any concrete case." 377 U. S. 330-332.

(d) In *Craig v. Boren*, 429 U. S. 190, 209-210 (97 SC 451, 50 LE2d 397) (1976), the Court expressly held that "the operation of the Twenty-first Amendment does not alter the application of equal protection standards that otherwise govern this case."

At issue in *Craig* were Oklahoma statutory laws discriminating between males under the age of 21 and females under the age of 18 with respect to the sale of 3.2% beer. The Court held the question for decision to be "whether such a gender-based differential constitutes a denial to males 18-20 years of age of the equal protection of the laws

in violation of the Fourteenth Amendment." 429 U. S. at p. 192. The Court held that this gender-based discrimination did violate equal protection, rejecting the argument that the fact that the challenged statutes concerned the sale and distribution of alcohol within the ambit of the Twenty-first Amendment insulated the statutes from the equal-protection challenge. As to this, the Court held that "the Twenty-first Amendment does not save the invidious gender-based discrimination from invalidation as a denial of equal protection of the laws in violation of the Fourteenth Amendment." Id. at pp. 204-205.

However, it should be noted that the Court also distinguished *Mahoney* and *Young's Market Co.* as involving "purely economic matters that traditionally merit only the mildest review under the Fourteenth Amendment," id. at p. 207, whereas *Craig* was viewed as involving "individual rights." Id. at p. 207.

In *Craig*, the Court went on to hold, "[i]t is true that *California v. La Rue*, 409 U. S. 109, 115 [93 SC 390, 395, 34 LE2d 342] (1972), relied upon the Twenty-first Amendment to 'strengthen' the State's authority to regulate live entertainment at establishments licensed to dispense liquor, at least when the performances 'partake more of gross sexuality than of communication,' *id.*, at 118, [93 SC at 397]. Nevertheless, the Court has never recognized sufficient 'strength' in the Amendment to defeat an otherwise established claim of invidious discrimination in violation of the Equal Protection Clause. Rather, *Moose Lodge No. 107 v. Irvis*, 407 U. S. 163, 178-179 [92 SC 1965, 1974, 32 LE2d 627] (1972), establishes that state liquor regulatory schemes cannot work invidious discriminations that violate the Equal Protection Clause." 429 U. S. at pp. 207-208.

In *Moose Lodge*, supra, the Court, without any express consideration of the Twenty-first Amendment, held that where a state's liquor control board required compliance by private clubs with provisions of their constitutions and by-laws, which, in that case, contained racially discriminatory provisions, the Equal Protection Clause prohibiting discriminatory action by the state had been violated.

(e) In *Capital Cities Cable, Inc. v. Crisp*, 467 U. S. 691 (104 SC 2694, 81 LE2d 580) (1984), cable television system operators were seeking relief against enforcement of Oklahoma's prohibition against cable operators' carrying out-of-state alcoholic beverage commercials over their systems. The Supreme Court held that the state's ban conflicted with FCC regulations completely pre-empting regulation of "pay cable" programming and requiring that out-of-state television signals which are imported be retransmitted to subscribers without deletion or alteration. In *Capital Cities*, it was held that the Twenty-first Amendment did not save the ban from pre-emption, since the state's power to regulate liquor importation and sale was not directly implicated. As to this, the Court stated:

"The States enjoy broad power under § 2 of the Twenty-first Amendment to regulate the importation and use of intoxicating liquor within their borders. *Ziffrin, Inc. v. Reeves,* [supra]. At the same time, our prior cases have made clear that the Amendment does not license the States to ignore their obligations under other provisions of the Constitution. See, e.g., *Larkin v. Grendel's Den, Inc.,* 459 U. S. 116, 122, n. 5, [103 SC 505, 74 LE2d 297] (1982); *California v. La Rue,* [supra]; *Wisconsin v. Constantineau,* 400 U. S. 433, 436 [91 SC 507, 27 LE2d 515] (1971); *Department of Revenue v. James B. Beam Distilling Co.,* 377 U. S. 341, 345-346 [84 SC 1247, 12 LE2d 362] (1964). Indeed, '(t)his Court's decisions . . . have confirmed that the Amendment primarily created an exception to the normal operation of the Commerce Clause.' *Craig v. Boren,* [supra]. Thus, as the Court explained in *Hostetter v. Idlewild Bon Voyage Liquor Corp.,* [supra], § 2 reserves to the States power to impose burdens on interstate commerce in intoxicating liquor that, absent the Amendment, would clearly be invalid under the Commerce Clause. *Id.,* . . . ; *State Board of Equalization v. Young's Market Co.,* [supra]. We have cautioned, however, that '(t)o draw a conclusion . . . that the Twenty-first Amendment has somehow operated to "repeal" the Commerce Clause wherever regulation of intoxicating liquors is concerned would . . . be an absurd oversimplification.' *Hostetter,* supra, . . . Notwithstanding the Amendment's broad grant of power to the States, therefore, the Federal Government plainly retains authority under the Commerce Clause to regulate even interstate commerce in liquor. *Ibid.* See also *California Retail Liquor Dealers Assn. v. Midcal Aluminum, Inc.,* [445 U. S. 97, 109-110 (100 SC 937, 63 LE2d 233) (1980)]; *Nippert v. Richmond,* 327 U. S. 416, 425, n. 15 [66 SC 586, 90 LE 760, 162 ALR 844] (1946); *United States v. Frankfort Distilleries, Inc.,* 324 U. S. 293 [65 SC 661, 89 LE 951] (1945)." 467 U. S. at pp. 712-713.

(f) In 1984, the Supreme Court rendered its decision in *Bacchus Imports, Ltd. v. Dias,* 468 U. S. 263 (104 SC 3049, 82 LE2d 200) (1984), and this is the most relevant decision for the purposes of the present case.

At issue in *Bacchus* was an excise tax enacted by the State of Hawaii on sales of liquor at wholesale, and certain locally produced alcoholic beverages were exempted from the tax. The express purpose of the exemption was to encourage the development of the Hawaiian liquor industry. The Court noted that a finding that state legislation constitutes economic protection in violation of the Commerce Clause may be made on the basis of either discriminatory purpose or discriminatory effect. As authority, the Court cited *Hunt v. Washington Apple Advertising Comm.,* 432 U. S. 333, 352-353 (97 SC 2434, 53 LE2d 383) (1977), and *Philadelphia v. New Jersey,* 437 U. S. 617, 624 (98 SC 2351, 57 LE2d 475) (1978), which are traditional Commerce

Clause cases. After so noting, the Court went on to hold that the express discriminatory purpose underlying the Hawaiian tax exemption was sufficient to invalidate it under the Commerce Clause.

In *Bacchus*, the state made a belated argument that even if the tax exemption violated ordinary Commerce Clause principles, it was saved by the Twenty-first Amendment. After reviewing the broad language of the earlier cases and the narrower holdings of the later cases, the Court rejected this argument, holding, "doubts about the scope of the Amendment's authorization notwithstanding, one thing is certain: The central purpose of the provision was not to empower States to favor local liquor industries by erecting barriers to competition. It is also beyond doubt that the Commerce Clause itself furthers strong federal interests in preventing economic Balkanization. [Cits.] State laws that constitute mere economic protectionism are therefore not entitled to the same deference as laws enacted to combat the perceived evils of an unrestricted traffic in liquor. Here, the State does not seek to justify its tax on the ground that it was designed to promote temperance or to carry out any other purpose of the Twenty-first Amendment, but instead acknowledges that the purpose was 'to promote a local industry.' . . . Consequently, because the tax violates a central tenet of the Commerce Clause but is not supported by any clear concern of the Twenty-first Amendment, we reject the State's belated claim based on the Amendment." 82 LE2d at p. 212.

(g) In its most recent decision, the Court in *Brown-Forman Distillers Corp. v. New York State Liquor Auth.*, 476 U. S. __ (106 SC __, 90 LE2d 552) (1986), struck down, as violating the Commerce Clause, a New York law which required distillers of liquor in New York to file monthly price schedules which prohibited them from selling their products to wholesalers within the state at prices any higher than the lowest prices that the distillers charged wholesalers anywhere else in the United States during the month in which the price schedule was filed.

Holding that the law violated the Commerce Clause, the Court categorized the law as an exercise in economic protectionism in which the State of New York was attempting to require producers or consumers in other states to surrender whatever competitive advantages they possessed to local producers or consumers. As to the argument that the Twenty-first Amendment saved the law from invalidation under the Commerce Clause, the Court held:

"New York has a valid constitutional interest in regulating sales of liquor within the territory of New York. Section 2 of the Twenty-first Amendment, however, speaks only to state regulation of the 'transportation or importation into any State . . . for the delivery or use therein' of alcoholic beverages. That Amendment, therefore, gives New York only the authority to control sales of liquor in New York,

and confers no authority to control sales in other states. The Commerce Clause operates with full force whenever one State attempts to regulate the transportation and sale of alcoholic beverages destined for distribution and consumption in a foreign country, *Idlewild Bon Voyage Liquor Corp.*, supra, or another State. Our conclusion that New York has attempted to regulate sales in other States of liquor that will be consumed in other States therefore disposes of the Twenty-first Amendment issue." Slip. Op. p. 11.

2. As previously stated, the statutory provisions which impose the import tax on distilled spirits, alcohol, and table wines were enacted in 1985. The preamble to the 1985 Act states, among its purposes, "to provide for the increased cost of administration and collection of revenues; to aid in the exercise of the police power; to promote temperance . . ." Ga. L. 1985, p. 665. Section 1 of the 1985 Act states, "The General Assembly finds and determines that the cost of regulating and administering the manufacture, distribution, and sale of alcohol, distilled spirits, table wines, and dessert wines consumed in this state is greater for imported alcohol, distilled spirits, table wines, and dessert wines than it is for alcohol, distilled spirits, table wines, and dessert wines produced within this state and further finds and determines that it is in the best interest of the citizens of this state that the increased costs be provided for by taxation." Id.

In sustaining the constitutionality of the import tax under attack here, the trial court found that "it is axiomatic that the state may better police, regulate and control alcoholic beverages produced within its borders than that which is imported from other states, and that a cost differential exists with regard to the control and administration of the vast quantities of alcoholic beverages imported into this State." Heublein does not contest this finding, but rather expressly stated before the trial court that "we are not sitting here and challenging what the state says their purpose was in adopting this legislation. This is not a factual case. What we are saying is whatever you feel your reason was, it doesn't fly in light of the Commerce Clause." Heublein maintains this argument before this court as well.

We must disagree with Heublein's argument that, regardless of the purpose underlying this import tax, "it doesn't fly in light of the Commerce Clause." The court in *Bacchus* clearly acknowledged that, although the tax there did violate the Commerce Clause because its undisputed purpose was to promote local industry, the question for decision in a case in which a liquor law within the ambit of the Twenty-first Amendment is challenged as violating the Commerce Clause is "whether the principles underlying the Twenty-first Amendment are sufficiently implicated . . . to outweigh the Commerce Clause principles that would otherwise be offended." 82 LE2d at p. 212. Here, the unchallenged purpose of the import tax implicates central

concerns of the Twenty-first Amendment, i.e., defraying the increased costs of regulating the importation into this state of intoxicating liquors. For this reason, we cannot say that the trial court erred in sustaining the constitutional validity of the tax under the Twenty-first Amendment rather than striking it down under the Commerce Clause.

3. Heublein also argues that the import tax violates the Equal Protection Clause. However, what this case involves are "purely economic matters that traditionally merit only the mildest review under the Fourteenth Amendment." *Craig v. Boren,* supra, 429 U. S. at p. 207. Here, the import tax is rationally related to the accomplishment of the legitimate state objective of regulating the importation into the state of intoxicating liquor. For this reason, we find no equal-protection violation.

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 7, 1987.

*McDaniel, Chorey & Taylor, John L. Taylor, Jr., John L. Schaub, Siegel, Moses & Schoenstadt, Morton Siegel, Michael A. Moses, James L. Webster, Richard E. Walton, Harold V. Gorman, Jr.,* for appellant.

*Michael J. Bowers, Attorney General, Jeff L. Milsteen, Assistant Attorney General,* for appellees.