46642, 46681. JAMES B. BEAM DISTILLING COMPANY v.
STATE OF GEORGIA et al.; and vice versa.
(382 SE2d 95)

MARSHALL, Chief Justice.

James B. Beam Distilling Co. (Beam) brought this action seeking a $2,400,000 refund for excise taxes it paid in 1982, 1983 and 1984. The taxes were paid pursuant to OCGA § 3-4-60, which imposed a higher tax on alcoholic beverages imported into the state than on those manufactured in Georgia. The statute was amended in 1985, shortly after the United States Supreme Court found a similar statute to be unconstitutional. See *Bacchus Imports v. Dias*, 468 U. S. 263

(104 SC 3049, 82 LE2d 200) (1984).[1] In the proceedings below, the trial court determined that the pre-1985 statute was unconstitutional because it violated the Commerce Clause of the U. S. Constitution. The court further held that the ruling would only be applied prospectively so that Beam is not entitled to a refund. We affirm.

1. The State appeals the trial court's decision that the pre-1985 version of OCGA § 3-4-60 was unconstitutional. We find no error. The statute imposed higher taxes on out-of-state products solely because of their origin. The record demonstrates that the purpose and effect of the statute was simple economic protectionism, which is virtually per se invalid under the Commerce Clause of the U. S. Constitution. Id.

2. Beam asserts that the trial court erred in applying the decision prospectively only. We disagree. In *Flewellen v. Atlanta Cas. Co.*, 250 Ga. 709 (300 SE2d 673) (1983), this Court adopted the three-pronged test set forth in *Chevron Oil v. Huson*, 404 U. S. 97 (92 SC 349, 30 LE2d 296) (1971), to be applied in deciding a retroactivity question:

> (1) Consider whether the decision to be applied nonretroactively established a new principle of law, either by overruling past precedent on which litigants relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed.

> (2) Balance of the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation would further or retard its operation.

> (3) Weigh the inequity imposed by retroactive application, for, if a decision could produce substantial inequitable results if applied retroactively, there is ample basis for avoiding the injustice or hardship by a holding of nonretroactivity.

*Flewellen*, 250 Ga. at 712. Retroactive application of a judicial decision is not compelled constitutionally or otherwise[2] where unjust results would accrue to those who justifiably relied on the prior rule.

---

[1] The amended statute has been challenged and found to be constitutional. See *Heublein, Inc. v. State*, 256 Ga. 578 (351 SE2d 190) (1987).

[2] We are not persuaded by Beam's argument that OCGA § 48-2-35 (a) mandates retroactive application of the constitutional decision. The statute provides, "A taxpayer shall be refunded any and all taxes or fees which are determined to have been erroneously or illegally assessed and collected from him . . . ." The statute does not describe how it should be determined that a tax was "illegally assessed." It simply does not address the issue of retroactive versus prospective application of a constitutional decision.

*Strickland v. Newton County*, 244 Ga. 54 (258 SE2d 132) (1979) (decision holding local option sales tax should be applied prospectively to avoid unjust results).

Applying the first prong of the *Chevron* test, we note that the decision does not now establish a "new rule." However, if the decision had been rendered during 1984, the last year that the tax was assessed, it would certainly have overruled past precedent. The tax structure embodied in OCGA § 3-4-60 had been in effect in Georgia since 1938. In 1939 the statute was challenged on the grounds that it violated the Commerce Clause of the U. S. Constitution and was upheld. *Scott v. State,* 187 Ga. 702 (2 SE2d 65) (1939), overruled on other grounds, *Blackston v. Ga. Dept. of Natural Resources*, 255 Ga. 15 (334 SE2d 679) (1985). After the *Scott* decision, the import tax was not challenged again until 1985. See *Heublein,* supra. During the time that the taxes at issue here were collected, the State had no reason to believe that the import taxes were unconstitutional. Moreover, when it became clear that there might be constitutional problems with the statute, see *Bacchus,* supra, the legislature moved promptly to amend the statute to rectify the defects. Thus, it appears that the first prong of the *Chevron* test favors prospective application of the rule.

The second prong of the *Chevron* test has no application here because the statute at issue was repealed in 1985. We move therefore to the third prong of the test, which involves balancing the equities. Beam seeks 2.4 million dollars that it paid in 1982, 1983 and 1984. There are at least two other lawsuits currently pending in which other alcohol producers seek over 28 million dollars in tax refunds on the same grounds. Economic realities lead to the inescapable conclusion that the cost of this tax has or could have been already absorbed by the companies and passed on to Georgia consumers. Indeed, retroactive application of the ruling might well result in a windfall to the alcohol producers.

On the other hand, if the decision is applied retroactively, Georgia faces liability for over 30 million dollars in refunds for taxes it collected in good faith under an unchallenged and presumptively valid statute. Georgia would have to refund large sums of money that it has already spent. Prospective application would avoid imposing a severe financial burden on the State and its citizens. In such situations, this Court and the courts of other states have frequently declined retroactive application, even though the ruling allows an unconstitutional statute to remain in effect for a limited period of time. See *Federated Mut. Ins. Co. v. DeKalb County*, 255 Ga. 522 (341 SE2d 3) (1986); *American Trucking Assn. v. Gray*, 746 SW2d 377 (295 Ark. 43) (1988) (out-of-state truckers were not entitled to refund of taxes found violative of the Commerce Clause); *Nat. Distributing*

*Co. v. Office of the Comptroller*, 523 S2d 156 (Fla. 1988) (prospective ruling appropriate where equities weighed against refund of taxes paid under alcoholic beverage statute); *Metropolitan Life Ins. Co. v. Commr. of Dept. of Ins.*, 373 NW2d 399 (N.D. 1985) (no refund of taxes paid under statute giving unconstitutional preference to domestic insurance companies).

3. In 1939, this Court upheld the precursor to the pre-1985 version of OCGA § 3-4-60 against a Commerce Clause challenge. *Scott v. State*, 187 Ga. 702, supra, *overruled on other grounds, Blackston v. Ga. Dept. of Natural Resources*, 255 Ga. 15, supra. Now, some fifty years later, we are striking down its successor because it violates the Commerce Clause.

As the dissent points out, there are a number of cases strongly supporting the argument that because the statute was unconstitutional, it was void ab initio. See, e.g., *Dennison Mfg. Co. v. Wright*, 156 Ga. 789 (120 SE 120) (1923); *Battle v. Shivers*, 39 Ga. 405 (1869).

However, the rule of voidness ab initio is not an absolute rule. It has exceptions.

"The general rule is that an unconstitutional statute is wholly void and of no force and effect from the date it was enacted. This harsh rule is subject to exceptions, however, where, because of the nature of the statute and its previous application, unjust results would accrue to those who justifiably relied on it. . . ."

While we have declared statutes to be void from their inception when they were contrary to the Constitution at the time of enactment, . . . those decisions are not applicable to the present controversy, as the original . . . statute, when adopted, was not violative of the Constitution under court interpretations of that period.

*Adams v. Adams*, 249 Ga. 477, 478-79 (291 SE2d 518) (1982) (citations omitted) (quoting *Strickland v. Newton County*, 244 Ga. 54, 55 (258 SE2d 132) (1979) (citations omitted)). Other cases have held similarly. E.g., *Strickland v. Newton County*, 244 Ga., supra; *Allan v. Allan*, 236 Ga. 199, 207-08 (223 SE2d 445) (1976). In all of these cases, the Court has applied its decision prospectively rather than retroactively.

We apply the exception to the general rule. Here, the state has collected taxes under this statute or its predecessors over a half century in reliance on a decision of this court. Under these circumstances and the balancing factors discussed in Div. 2, supra, we hold it would be unjust to declare the statute void ab initio.

In sum, we conclude that prospective application of the decision is appropriate. The decision of the trial court is affirmed in all respects.

*Judgment affirmed. All the Justices concur, except Smith and Weltner, JJ., who dissent as to Divisions 2 and 3.*

SMITH, Justice, concurring in part and dissenting in part.

The problem with this case is that it is too simple. All that is involved is a statute which has been declared unconstitutional, a constitutional provision which requires this Court to declare the unconstitutional statute *void*, and a statute which says taxes erroneously or illegally collected must be refunded. This case involves the state's illegal collection of taxes from a single, readily-identifiable party on the basis of an unconstitutional statute. The majority has successfully avoided the clear mandate of the Georgia Constitution, Georgia case law, and the Georgia refund statute. The "complicated exceptions" which the majority pointed out only make the simplicity of this case more pronounced. In short, the majority opinion is an excellent example of the judiciary attacking the solid rock of established Georgia constitutional law and Georgia case law with a hoe and trying to convince everyone that it's a bulldozer.

### Taxpayer's Rights

By placing emphasis on the issue of whether the decision in *Bacchus Imports v. Dias*, 468 U. S. 263 (104 SC 3049, 82 LE2d 200) (1984)[3] should be given a retroactive application, the majority disguises the real issue: Which is more important in Georgia—the state's right to protect the ill-gotten gains of the treasury or the taxpayer's right to relief after a clear violation of the taxpayer's constitutional rights? See Tatarowicz, *Right to a Refund for Unconstitutionally Discriminatory State Taxes and Other Controversial State Tax Issues Under the Commerce Clause*, 41 Tax Lawyer (Fall 1987).

The majority opinion concludes that the state's right to protect its treasury is more important; however, I believe that the right of the taxpayer is more important.[4] The majority found, and I agree, that

---

[3] The Court in *Bacchus Imports v. Dias*, 468 U. S., supra at 277, declined to address the refund issue. lt remanded the case to the Supreme Court of Hawaii to determine the refund issues "which are essentially issues of remedy for the imposition of a tax that unconstitutionally discriminated against interstate commerce . . ." 468 U. S. at 277. The Court did note, "It may be, for example, that given an unconstitutional discrimination, a full refund is mandated by state law." Note 14. Here the statute unconstitutionally discriminated against non-resident taxpayers and a full refund is mandated by state law.

[4] As we celebrate this Fourth of July, we are reminded that one of the sparks which ignited the Revolutionary War was the abusive manner in which the colonists were being taxed by the King. Our forefathers fought and won independence from a King who extracted

"the purpose and effect of the statute was simple economic protectionism, which is virtually per se invalid under the Commerce Clause of the U. S. Constitution."

Thus, I concur in the part of the majority opinion that affirms the trial court's holding that the pre-amendment statute was unconstitutional; however, there are several separate and distinct statutory and constitutional issues involved in this case that clearly distinguish it from the cases that have been cited by the majority.[5] Therefore, I strongly disagree with the majority's conclusion "that prospective application of the decision is appropriate."

### Discussion of the Majority Opinion

1. This Court adopted the test for retroactive application of judicial decisions set forth in *Chevron Oil v. Huson,* 404 U. S. 97 (92 SC 349, 30 LE2d 296) (1971) in *Flewellen v. Atlanta Cas. Co.,* 250 Ga. 709 (300 SE2d 673) (1983), but *Flewellen* did not declare a statute unconstitutional.[6]

The majority also states in Div. 2: "Retroactive application of a judicial decision is not compelled constitutionally or otherwise where unjust results would accrue to those who justifiably relied on the prior rule." As set out in Div. 3, infra, of this dissent, there is no question of "retroactive application of a judicial decision" when a statute is declared unconstitutional in Georgia. Once a statute is declared unconstitutional it becomes the *constitutional duty* of the judiciary to declare the statute *void.*

2. The majority would have us believe an earlier unsuccessful constitutional challenge in *Scott v. State,* 187 Ga. 702 (2 SE2d 65) (1939), somehow negates the constitutional mandate requiring this Court to declare the unconstitutional statute *void.* There is nothing in the Georgia Constitution indicating that reliance upon earlier decisions of this Court in any way changes or modifies the mandate of the constitution to declare unconstitutional statutes *void.*

---

excessive taxes, and the Constitution was drafted to protect the people from such abuses.

[5] Only one Georgia case was cited by the majority in Div. 2 which allegedly supports its conclusion that "an unconstitutional statute [may] remain in effect for a limited period of time." This case, *Federated Mut. Ins. Co. v. DeKalb County,* 255 Ga. 522 (341 SE2d 3) (1986), dealt with a repeal of a statute or ordinance by implication. The constitutionality of the statute was not involved. The other cases cited were foreign, and the majority did not show that those states have constitutional provisions similar to Georgia's. Under our constitution a statute is either constitutional and valid or unconstitutional and *void.* The constitution does not mandate a holding of "partial voidness."

[6] The only issue in *Flewellen* involved the proper interpretation and application of state insurance statutes.

## The Georgia Constitutional Mandate

3. Our constitution *requires* us to declare unconstitutional legislative acts *void*. Ga. Constitution 1983, Art. I, Sec. II, Par. V.[7] That constitutional provision does not allow this Court to set a specific date upon which an unconstitutional statute becomes inoperative. It does not allow this Court to determine that a statute is just a little bit void. It does not allow this Court to ignore its clear mandate or the long line of Georgia cases that have upheld the constitutional mandate. Nor can this Court rely on United States Supreme Court decisions that are not on point and in which the Georgia Constitution was never discussed or considered. (See Div. 5, infra, discussion of *Chicot County Drainage District v. Baxter State Bank*, 308 U. S. 371 (60 SC 317, 84 LE 329) (1940).) Instead our constitution and case law require us to declare unconstitutional acts entirely *void* from their inception.

> An unconstitutional statute, though having the form, features, and name of law, is in reality no law. It is wholly void. In legal contemplation it is as inoperative as if it had never been passed. It has been declared that it is a misnomer to call such statute a law. Such a statute confers no authority upon any one, and affords protection to no one. Norton *v.* Shelby County, 118 U. S. 425 (6 Sup. Ct. 1121, 30 L. ed. 178); Ex Parte Siebold, 100 U. S. 371, 376 (25 L. ed. 717); [Cits.]; *McCants* v. *Layfield*, 149 *Ga.* 238 (99 S. E. 877).

> In Osborn *v.* Bank of the United States, 9 Wheat. 738 (6 L. ed. 204), Chief Justice Marshall declared that "it is an extravagant proposition that a void act can afford protection to the person who executes it." In *Boston* v. *Cummins*, 16 *Ga.* 102, 106 (60 Am. D. 717), this court declared that "The unconstitutional acts of the legislature, State and Federal, *are not laws*; and *no court will execute them, having a proper sense of its own obligations and responsibilities.*" In *Wellborn v. Estes*, 70 *Ga.* 390 this court said: "Legislative acts in violation of the constitution of this State or of the United States are void." The constitution of this State declares that "Legislative acts in violation of this constitution or the constitution of the United States are void, and the judiciary shall so declare them." Proceedings under an unconstitutional statute had before such statute is judicially declared to

---

[7] Paragraph V of the 1983 Georgia Constitution entitled "What acts void" states: "Legislative acts in violation of this Constitution or the Constitution of the United States are void, and the judiciary shall so declare them."

be unconstitutional are void. *Jordan* v. *Franklin*, 131 *Ga.*
487 (52 S. E. 673); *Worth County* v. *Crisp County*, 139 *Ga.*
117 (3) (76 S. E. 747); *James* v. *Blakely*, 143 Ga. 117 (84 S.
E. 431). [Emphasis supplied in part.]

*Dennison Mfg. Co. v. Wright*, 156 Ga. 789, 797 (120 SE 120) (1923).
See also *State Highway Dept. v. H. G. Hastings Co.*, 187 Ga. 204, 215
(199 SE2d 793) (1938); *Tarpley v. Carr*, 204 Ga. 721, 727 (51 SE2d
638) (1949) (City officers were not *de facto* officers of office created
under an unconstitutional charter); *Franklin v. Harper*, 205 Ga. 779,
784 (55 SE2d 221) (1949); *Baggett v. Linder*, 208 Ga. 590, 591 (68
SE2d 469) (1952); *Milam v. Adams*, 216 Ga. 440, 444 (117 SE2d 343)
(1960); *K. Gordon Murray Productions, Inc. v. Floyd*, 217 Ga. 784,
787 (125 SE2d 207) (1962) (". . . the remedy provided in the ordi-
nance is not even law if the petitioner's constitutional attack is sus-
tained.") *Dobson v. Brown*, 225 Ga. 73, 76 (166 SE2d 22) (1969)
(" 'Not even estoppel can legalize or vitalize that which the law de-
clares unlawful and void.' "); and *Mapp v. First Ga. Bank,* 156 Ga.
App. 380 (274 SE2d 765) (1980). (See note 7, infra.)[8]

Although *Bacchus* may have led this Court to conclude that the
Georgia statute, in the present case was unconstitutional, it does not
affect Art. I, Sec. II, Par. V of the Georgia Constitution which pro-
vides that an unconstitutional statute is void from its inception. Once
the statute was declared unconstitutional, it was as if no statute, case
law, or public policy had ever been established. "The Constitution is
irrepealable, and any law in violation of it is void—is null; rights *can-
not* grow up under such a law." *Battle v. Shivers*, 39 Ga. 405, 417
(1869). Once the statute was declared unconstitutional it became in-
operative, as if it had never been passed. Therefore, no court having a
proper sense of its own obligations and responsibilities will execute it.
*Dennison*, supra, 156 Ga. at 797. The state had no authority to assess
or collect the taxes, and this Court has no authority to execute a void
statute.

### There Are No Equities To Balance

4. The majority's discussion of "balancing the equities," is mis-
placed. When a statute is declared unconstitutional, there can be no
balancing of equities as none exist. "[W]e are bound to follow the
laws of this state and the decisions of our Supreme Court even when
. . . the resulting decision effects a hardship. . . ." *Mapp v. First Ga.*

---

[8] The law in this area has been so firmly established that few recent cases discuss the
issue.

*Bank,* 156 Ga. App. 380, 382 (274 SE2d 765) (1980).[9]

### Court Created "Exceptions" To The Georgia Constitution

5. A careful reading of the three cases cited by the majority for the "exceptions" to the constitutional mandate reveals a fundamental weakness. The first case to deviate from the constitutional mandate and the feeble foundation relied upon in the other two cited cases is *Allan v. Allan,* 236 Ga. 199 (223 SE2d 445) (1976). The Court in *Allan,* without any discussion of the Georgia Constitution or the long line of Georgia cases that have declared that an unconstitutional statute is *void,* relied instead upon dicta set forth by the United States Supreme Court in *Chicot County Drainage District v. Baxter State Bank,* 308 U. S., supra at 374. However, immediately preceding the *Chicot* dicta that the majority relied upon, the following appeared:

> [An] Act of Congress, having been found to be unconstitutional, [is] not a law; that it [is] inoperative, conferring no rights and imposing no duties. . . . *Norton v. Shelby County* 118 U. S. 425, 442; *Chicago, I. & L. Ry. Co. v. Hackett,* 228 U. S. 559, 566.

*Chicot* at 374.

An even more astonishing discovery in reading *Chicot* is that *Chicot* cited *Norton v. Shelby County,* the exact same case cited in *Dennison,* supra, (see Div. 3 of this dissent), for the proposition that an unconstitutional statute "confers no authority upon any one, and affords protection to no one." See Div. 3 of this dissent. The *Allan* opinion ignored the above language with its two citations to Supreme Court decisions and quoted dicta that was completely devoid of a citation to any decision of any court.[10]

---

[9] On May 26, 1976 appellant Mapp purchased an automobile from Ed Cook. The car had been purchased by Cook from Hopkins Chevrolet, Inc., which in turn had purchased the automobile from Timmers Chevrolet, Inc., pursuant to a sale under the Georgia Abandoned Motor Vehicle Act. On October 26, 1976, First Georgia Bank repossessed the automobile, claiming that it held a perfected security interest in the automobile which had been created at the time of the initial purchase by C. J. Wilson. Mapp filed suit against the Bank, alleging that the Bank had illegally converted the automobile. The trial court granted summary judgment in favor of the Bank, concluding that Mapp's title was invalid on the basis of a 1979 case which held the Georgia Abandoned Motor Vehicle Act to be unconstitutional. Since the sale was in accordance with an act which was later held to be unconstitutional, the sale passed no title. The Court of Appeals affirmed the trial court's ruling because an unconstitutional statute is a void statute from its inception and no rights accrue thereunder.

[10] The language relied upon by *Allan* was totally unnecessary in adjudicating the *Chicot* case. The respondents in *Chicot* failed to raise a constitutional issue in the courts below; therefore, the case was "appropriately confine[d] . . . to the question of *res judicata.* . . ." at 375.

Reliance on unsupported *Chicot* dicta in *Allan* or in any other case is totally without foundation and substance. The cases that follow *Chicot* and *Allan* represent abberations that should be overruled because they conflict with the Georgia Constitution and Georgia cases. See also *Strickland v. Newton County*, 244 Ga. 54 (258 SE2d 132) (1979) and *Adams v. Adams*, 249 Ga. 477, 479 (291 SE2d 518) (1982) which use *Allan* and *Chicot* as their authority.

## The Extraordinary Facts Of The Three Cases

6. Assuming arguendo that the cases are not abberations but do in fact represent "exceptions," then they offer the strongest arguments for declaring this case is not such an "exception." Each of the "exception cases" contained unusual and extraordinary conditions that are not present in this case. By applying the alleged "exceptions" to the general rule, the majority has made the "exceptions" the rule.

In the three cases that represent the "exceptions," the Court in attempting to do equity, did not face the constitutional mandate head-on.

In *Allan, Strickland*, and *Adams*, there may have been other individuals who may have been harmed in the past, but they were, for all practical purposes, unascertainable. The amount of damage suffered by other individuals was also almost impossible to determine. In *Allan* and *Adams* there was also the potential of disrupting years of quiet titles and confusing property law.

This case, on the other hand, involves one clearly-identified taxpayer who paid the state an ascertainable amount of money in illegal taxes over a specified period of time; therefore, there is no difficulty in determining to whom the taxes should be refunded and for what amount. In addition, such a refund would not disturb property law.

The "exceptions" are built upon a faulty unconstitutional foundation, and they should fall. They are court-made, but not constitutionally allowed.

## The Constitution Is The Will Of The People

7. The supreme power of this state is in the people and the written constitution is the will of the people. The people have decided that the judiciary must declare unconstitutional statutes *void*. By looking to dicta of United States Supreme Court decisions — in which our constitution was not at issue — this Court ignores the dictate of the people as set forth in the Georgia Constitution.

*The Remedy Statute Represents The Public Policy Of The State*

8. By employing sweeping language in the remedy statute, OCGA § 48-2-35, the General Assembly made clear that *any and all* taxes which are erroneously or illegally assessed and collected shall be refunded.[11] If the court denies a refund to a taxpayer who has successfully challenged the constitutionality of a taxing statute, then the Court has assumed that the remedy statute has no meaning. This is contrary to established law. "The courts of this state will not assume that the Legislature intended any provision of a statute to be without meaning." *Douglas County v. Anneewakee, Inc.*, 179 Ga. App. 270, 273 (346 SE2d 368) (1986).

The remedy statute represents the state's public policy to refund any and all taxes erroneously or illegally assessed and collected under state law. The statute includes taxes which are paid voluntarily and involuntarily, thus no element of duress is required nor must a protest be filed. The remedy statute is mandatory rather than directory, and it acts as a waiver of sovereign immunity. *Thompson v. Continental Gin Co.*, 73 Ga. App. 694 (37 SE2d 819) (1946).

Since the General Assembly intended to allow refunds under many different circumstances, it is incomprehensible that the taxpayer in the present case who successfully challenged the constitutionality of the taxing statute is barred from recovery. The key words of the remedy statute are *erroneously or illegally assessed and collected*. The majority indicates that the state had "no reason to believe that the import taxes were unconstitutional"; however, under the broad language of the statute it makes no difference that the state *erroneously* assessed and collected taxes under the unconstitutional statute. Erroneously assessed and collected taxes must be returned. Once the taxing statute was declared unconstitutional and *void*, there was no legal collection of these taxes, nor had there ever been one. Therefore, the state is illegally in possession of the taxpayer's property.

*Other Constitutional Provisions Which Require Repayment*

9. There are also constitutional provisions which require the return of unconstitutionally assessed and collected taxes. The state can-

---

[11] OCGA § 48-2-35 is entitled "Refunds." Subsection (a) provides:
A taxpayer *shall be refunded* any and all taxes or fees which are determined to have been erroneously or illegally assessed and collected from him under the laws of this state, whether paid voluntarily or involuntarily, and shall be refunded interest on the amount of the taxes or fees at the rate of 9 percent per annum from the date of payment of the tax or fee to the commissioner. . . . [Emphasis supplied.]

not deprive a person of property without due process of law. Georgia Constitution 1983, Art. I, Sec. I, Par. I. The due-process clause extends to every proceeding which may be a deprivation of "life, liberty, or property, whether the process be judicial or administrative or executive in its nature. [Cit.]" *Zachos v. Huiet*, 195 Ga. 780, 786 (25 SE2d 806) (1943). The assessment and collection of taxes in the absence of a valid taxing statute constitutes such an unconstitutional deprivation of property.

10. One of the paramount duties of government is to protect the property of its taxpayers. Georgia Constitution 1983, Art. I, Sec. I, Par. II. "It is the duty of the State government, through the instrumentality of the courts, to protect the property of a citizen and his right to possess and control it." *Irwin v. Willis*, 202 Ga. 463, 477 (43 SE2d 691) (1947). This Court must protect taxpayers who have had property erroneously or illegally taken under the auspices of an unconstitutional taxing statute by requiring the state to refund such illegally-collected taxes.[12]

The above constitutional provisions, all found in our Bill of Rights, were enacted to place limits on the government and to protect the people from governmental abuses. The government's authority to tax is powerful. In fact, in 1819 Chief Justice Marshall said: "That the power to tax involves the power to destroy . . . [is a] proposition[] not to be denied." *McCulloch v. Maryland*, 17 U. S. 316, 431 (1819).

If this Court does not treat the unconstitutional statute as *void* from its inception, then nothing will deter the state from enacting other unconstitutional statutes and reaping the benefits therefrom. The constitutional mandate to declare the statute void, Ga. Constitution, 1983, Art. I, Sec. II, Par. V, is the taxpayer's protection from the power of the sovereign "to destroy." *McCulloch*, id.

This Court has placed a great deal of emphasis on the fact that the taxpayer in this case is a liquor company. It does not matter who the taxpayer is — a liquor company or an illegally taxed individual — the taxpayer is entitled to protection under the laws of this state. As former Supreme Court Justice Hugo Black said: "Good men and bad men are entitled to trial and sentence in accordance with the law."

---

[12] An identical question is involved in *Marcus Collins v. Waldron and all Retired Federal Employees Similarly situated*, No. 47018 argued June 27, 1989. Retired federal employees challenged Georgia's scheme of taxation which taxes the retirement income of federal retirees while exempting the retirement income of state retirees as being unconstitutional. They argued, under the authority of *Davis v. Michigan Department of Treasury*, __ U. S. __, 57 U.S.L.W. 4389 (March 28, 1989), that the Georgia scheme is unconstitutional and, therefore, the taxes were illegally collected.

## Conclusion

The constitutional mandate requiring this Court to declare the statute *void* has been ignored. The state's expressed public policy to refund taxes is thwarted just as the remedy statute, OCGA § 48-2-35, is trampled and, in reality, repealed by this Court. The majority's insistence upon declaring the statute *void* prospectively only,[13] while ignoring the Georgia Constitution, grants a hollow victory to the appellant who proved the taxing statute was unconstitutional. It also denies a remedy for the unlawful taking of the appellant's property, disregards the mandatory nature of the remedy statute, and sends the message to Georgia taxpayers that this Court will not protect their rights nor require the state to be accountable for taxes unconstitutionally and erroneously or illegally assessed and collected.

DECIDED JULY 14, 1989 —
RECONSIDERATION DENIED JULY 26, 1989.

*Vincent, Chorey, Taylor & Feil, John L. Taylor, Jr., Michael A. Cole, Siegel, Moses & Schoenstadt, Morton Siegel,* for appellant.

*Michael J. Bowers, Attorney General, Verley J. Spivey, Senior Assistant Attorney General, Amelia Waller Baker, Assistant Attorney General,* for appellees.

---

[13] How can something be applied prospectively if it never existed? The doctrine of non-retroactivity may be used when dealing with a valid statute, law, case law, or a change in law or public policy. It does not apply and is not used in Georgia constitutional cases because the statute, case law, or public policy must, as required by our constitution and case law, be treated as if it never existed.