303 Ga. 791
FINAL COPY

S18C0437. TUCKER v. ATWATER et al.

ORDER OF THE COURT.

The Supreme Court today denied the petition for certiorari in this case. <u>All the Justices concur.</u>

PETERSON, Justice, concurring.

This is a case about just how far the First Amendment bends in allowing government to punish its employees for the viewpoints they communicate in their private lives. I am doubtful that it allowed the punishment imposed here. But the petitioner cannot prevail on the claims she actually brought even if her right to free speech was violated, and so I concur in the denial of the writ of certiorari.

Kelly Tucker, a public school teacher in Tift County, engaged in a written debate on Facebook regarding the Black Lives Matter movement. The exchange became heated and racially charged; after another participant addressed her with an epithet, Tucker posted a lengthy message dismissive of the movement and derogatory of "thugs." See <u>Atwater v. Tucker,</u> 343 Ga. App. 301, 302-303 (807 SE2d 56) (2017). This message was plainly about a topic of public concern, with no obvious link to her employment in public education. In this procedural posture (reversal of the denial of

summary judgment), we assume that Tucker posted the message on her own time and on her own computer, and without referencing her employment.

Nevertheless, people viewing the debate who disagreed with the viewpoint she expressed discovered she was a teacher and complained to a local elected official, Tucker's principal, and the local school superintendent. The school administration determined that the message Tucker posted was offensive and decided to punish her. They eventually suspended her for five days and required her to participate in diversity training. Tucker did not avail herself of her right of administrative appeal; instead, she filed a lawsuit against the superintendent and the school board chair alleging claims under 42 USC § 1983 for violation of her First Amendment rights.

The Court of Appeals held that the school officials were entitled to qualified immunity because they did not violate any clearly established law. I agree that there does not appear to be any clearly established law in this jurisdiction that the school officials violated. Indeed, Tucker doesn't cite a single case to that effect from this Court, the Eleventh Circuit, or the United States Supreme Court, which are the only courts that can clearly establish law for this jurisdiction, and I haven't found any. Accordingly, the school officials are entitled to qualified immunity, and I concur in the denial of the writ of certiorari. Nevertheless, I write separately to express my grave concerns that the school officials may well have violated Tucker's First Amendment rights.

The Court of Appeals observed that the familiar balancing test derived from Pickering v. Board of Education, 391 U. S. 563 (88 SCt 1731, 20 LE2d 811) (1968),

would apply to First Amendment claims by government employees like Tucker.[1] And the court repeated common language from Pickering and its progeny about balancing the employee's interest in speaking against the government employer's interest in not having its employees' speech disrupt government's efficient functioning. But it's not obvious to me that the Pickering balancing test applies to public employee speech cases when the employee speaks on his or her own time about matters unrelated to his or her employment; or, at least, it's not obvious that the balancing test applies normally to potential disruption caused by public reaction to the employee speaker's viewpoint. Indeed, in other contexts, we'd dismissively label such disruption a heckler's veto and proudly disregard it. See Forsyth County v. Nationalist Movement, 505 U. S. 123, 134-135 (112 SCt 2395, 120 LE2d 101) (1992) ("Speech cannot be financially burdened, any more than it can be punished or banned, simply because it might offend a hostile mob.").[2]

---

[1] The Court of Appeals also cited Garcetti v. Ceballos, 547 U. S. 410 (126 SCt 1951, 164 LE2d 689) (2006), but that case has no application whatsoever; it's about the government's ability to control speech by its employees when they are speaking on the government's behalf.

[2] Assuming Pickering did apply ordinarily, the Court of Appeals still made a significant error in its opinion (that nevertheless doesn't affect the outcome). Citing the Supreme Court's recent decision in Heffernan v. City of Paterson, __ U. S. __ (136 SCt 1412, 194 LE2d 508) (2016), the court held that Tucker bore the burden of proving that the defendants acted with an improper motive. Atwater, 343 Ga. App. at 308-309 (1). But Heffernan was not a Pickering case; the Supreme Court has elsewhere made clear that once the speech at issue has been shown to be on a matter of public concern, the government has the burden to show that suppression was legitimate under the Pickering balancing test. See Rankin v. McPherson, 483 U. S. 378, 388 (107 SCt 2891, 97 LE2d 315) (1987) (in case brought under 42 USC §

All but one of the decisions of the United States Supreme Court applying the Pickering balancing test has involved speech by a public employee either during the work day or in a manner or about a topic that implicated their employment. See Lane v. Franks, __ U. S. __ (134 SCt 2369, 2380-2381, 189 LE2d 312) (2014); Waters v. Churchill, 511 U. S. 661, 679-681 (114 SCt 1878, 128 LE2d 686) (1994) (plurality); Rankin v. McPherson, 483 U. S. 378, 388-391 (107 SCt 2891, 97 LE2d 315) (1987); Connick v. Myers, 461 U. S. 138, 149-154 (103 SCt 1684, 75 LE2d 708) (1983). Cf. Tenn. Secondary School Athletic Assn. v. Brentwood Academy, 551 U. S. 291, 299-300 (127 SCt 2489, 168 LE2d 166) (2007) (referencing Pickering test in context of athletic association's sanction of private school for recruiting violations); Bd. of County Commrs. v. Umbehr, 518 U. S. 668, 678 (116 SCt 2342, 135 LE2d 843) (1996) (affirming decision to remand for Pickering balancing in case involving speech by independent contractor). In contrast, in the one case not necessarily involving such speech, the Court gave the back of the hand to concerns of potential disruption caused by objections to viewpoints of employee speakers. See United States v. Nat. Treasury Employees Union, 513 U. S. 454, 466-477 (115 SCt 1003, 130 LE2d 964) (1995) ("The speculative benefits the honoraria ban may provide the Government are not sufficient to justify this crudely crafted burden on respondents' freedom to engage in expressive activities."). The Supreme Court has since characterized NTEU as

1983, "[t]he State bears a burden of justifying the discharge on legitimate grounds" in the application of the Pickering balancing test).

representing a distinct "line of cases" under which speech of government employees "on their own time on topics unrelated to their employment" is protected "absent some governmental justification far stronger than mere speculation in regulating it." City of San Diego v. Roe, 543 U. S. 77, 80 (125 SCt 521, 160 LE2d 410) (2004) (citation and punctuation omitted). This has raised a significant question as to how Pickering applies to speech by public employees that neither implicates employment nor occurs during the work day. See Randy J. Kozel, Free Speech and Parity: A Theory of Public Employee Rights, 53 Wm. & Mary L. Rev. 1985, 2035-2039 (2012) ("What is not entirely clear is how the First Amendment treats speech that bears no connection, physical or conceptual, to the speaker's employment."); Mary-Rose Papandrea, The Free Speech Rights of Off-Duty Government Employees, 2010 B.Y.U. L. Rev. 2117, 2130-2135 ("The Court's cases leave unclear what sort of First Amendment protection attaches to expressive activities of off-duty public employees. Specifically, it is unclear whether all such speech must involve a matter of public concern to receive any First Amendment protection at all and whether the degree to which the expression is related to work affects the strength of any such protection."). I do not propose an answer to that significant question here — I simply note that it exists, and that the existence of such a question should counsel government employers to act with considerably more caution in such cases than the Court of Appeals' opinion would suggest.[3]

---

[3] I also note that Tucker has raised no claim under the Georgia Constitution's Speech Clause,

American courts have long been jealous guardians of the right to free speech. And at the core of the First Amendment's protection of speech is a firm command that government must not engage in viewpoint discrimination. Indeed, "[i]f there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein." W. Va. State Bd. of Ed. v. Barnette, 319 U. S. 624, 642 (63 SCt 1178, 87 LE 1628) (1943). Tucker's Facebook screed does not strike me as possessing any redeeming social value. But the First Amendment does not turn on whether a judge or society as a whole believes a particular viewpoint is worth sharing. Indeed, "[i]f there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." Texas v. Johnson, 491 U. S. 397, 414 (109 SCt 2533, 105 LE2d 342) (1989); see also Snyder v. Phelps, 562 U. S. 443, 458 (131 SCt 1207, 179 LE2d 172) (2011). This "bedrock principle" is difficult to reconcile with allowing government

---

which is textually different from the First Amendment. See Ga. Const. Art. I, Sec. I, Par. V ("No law shall be passed to curtail or restrain the freedom of speech or of the press. Every person may speak, write, and publish sentiments on all subjects but shall be responsible for the abuse of that liberty."). We have interpreted the Georgia Speech Clause's identically worded predecessor as more protective of speech than the First Amendment in at least one context. See K. Gordon Murray Productions, Inc. v. Floyd, 217 Ga. 784, 790-793 (125 SE2d 207) (1962) (holding prior restraint of movies valid under United States Constitution but invalid under Georgia Constitution).

to punish its employees for viewpoints they communicate wholly unrelated to their employment.

Government employers clearly have authority to control their employees in the course of their employment. But it is something else entirely to hold that government employers can punish their employees based on viewpoints expressed in private speech, as the school officials did here. It is far from obvious that the precedent of the Supreme Court requires us to allow such a thing.[4]

I am authorized to state that Chief Justice Hines and Justice Blackwell join in this concurrence.

---

[4] We don't reach that question here because the absence of clearly established law entitles the school officials to qualified immunity. But there's no reason why the next such case should face the same problem. Indeed, had Tucker simply administratively appealed her discipline, she could have asserted her First Amendment arguments without any question of qualified immunity arising.

WRIT OF CERTIORARI DENIED JUNE 4, 2018.

Official immunity. Tift Superior Court. Before Judge Gray, Senior Judge.

Craig A. Webster, for appellant.
Smith, Welch, Webb & White, A. J. Welch, Jr., Megan M. Pearson,

Janet C. Scott; Reinhardt, Whitley, Summerlin & Pittman, Ross H. Pittman III,

Larry B. Mims, for appellees.